## Gerhart et al. v. Getz et al.

*Ruppin, Schuberth & Chambers,* for plaintiffs.
*John L. Hamaker* and *John E. Malone,* for defendants.

SCHAEFFER, J., October 23, 1936.—Plaintiffs filed a taxpayers' bill in equity for an injunction to restrain the Borough of Ephrata from proceeding with the execution of a certain contract for the erection and construction of a certain addition to the borough light plant, and further to restrain the Borough of Ephrata from making any payment in connection therewith to the contractors, William H. Walters & Sons. Subsequently, an amended bill in equity was filed to include William H. Walters & Sons as codefendants, as per order of court. Answers were filed thereto by the defendants. The preliminary injunction was granted on July 29, 1936, and on August 3, 1936,

it was continued with leave to defendants to move to dissolve same at any time. The matter came on for hearing at the regular equity term of court on September 28, 1936, when testimony was taken.

### Findings of fact

1. Plaintiffs are citizens, residents and taxpayers of the Borough of Ephrata.

2. Defendants are the councilmen of the Borough of Ephrata, the burgess thereof, and a partnership of building contractors with whom the borough contracted for the erection of an addition to its municipal electric plant.

3. Said borough is engaged in the manufacture of electricity for the use of its inhabitants, and owns and operates an electric light plant for that purpose.

4. On June 1, 1936, at a regular meeting of the borough council, ordinance no. 367 was enacted, providing, inter alia:

"That an addition be erected and constructed to the municipal light plant of the Borough of Ephrata, Pa. Said addition shall consist of a brick and steel building located at northwest side of present generator room and of the approximate dimensions of 21 feet, 8 inches by 52 feet, 8 inches by 19 feet, 8½ inches to eaves, basement same dimensions, 12 feet 2¼ inches deep. That the contract for said building addition shall be let by Council in such manner as Council may direct by motion."

5. Said ordinance was signed by the president of council and approved on June 1, 1936.

6. At the same meeting of council, on June 1, 1936, the borough council passed a motion accepting the proposition of defendants William H. Walters & Sons, for the erection of said building addition at the price of $9,056.

7. The same ordinance provided, in sections 1 and 2, also for the purchase from Josiah H. Smith, of Philadelphia, Pa., of a General Electric turbine and generator and the installation thereof. Said Josiah H. Smith is not a party to this proceeding.

8. At a special meeting of the borough council held on June 22, 1936, the borough council passed a motion dispensing with competitive bidding on said building addition "due to necessary emergency". A motion was also passed at said special meeting approving the contract for its erection with William H. Walters & Sons, one of defendants, at a contract price of $9,000, and authorizing the execution and delivery of the contract by the burgess and secretary.

9. On July 1, 1936, the burgess and secretary and William H. Walters & Sons executed the written contract for the erection of said building addition to the municipal electric plant.

10. No bids were asked on the erection of the addition and no notice was given by the borough council, by publication or otherwise, of the pendency of the contract and that bids therefor would be accepted, no bids were accepted, and the contract was not let to the lowest responsible bidder, but was let to defendants William H. Walters & Sons without competitive bidding.

11. Pursuant to said written contract, William H. Walters & Sons began work by making certain rock excavation with men and machinery, expending for same prior to the granting of the preliminary injunction on July 29, 1936, about $2,000.

12. No heating, plumbing, ventilating and electrical work was provided for in either the specifications or contract.

### Discussion

The controlling question at issue in this case is a legal one, and it is based upon a fact which is not in dispute. Can a borough in Pennsylvania legally enter into a contract for the erection of a building, which is an addition to its municipal light plant, to house a turbo-generator purchased therefor, without first advertising and receiving competitive bids for such building?

This involves the interpretation and construction of section 1202, clause LIII, of The General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of May 8, 1929, P. L. 1636, sec. 7, and the Act of June 9, 1931, P. L. 386, sec. 13, which is as follows:

"To make contracts or purchases in connection with proper legal requirements of the borough: Provided, That all contracts or purchases, other than purchases for water, electric light, and other public works of the borough, or for improvement made by its employes, or where the State or county is a party with the borough to a street improvement made by any borough, involving an expenditure of over five hundred dollars ($500), shall be in writing, and shall not be made except with and from the lowest responsible bidder, after due public notice by the secretary, published once a week for three weeks at intervals of seven days in one newspaper published in such borough, and, if no newspaper is published therein, then by publication in one newspaper printed in the county and circulating generally in the borough; and such bids shall be received, opened, and read in open meeting of council, at a time fixed by such notice, and not earlier than twenty-one days after the first publication thereof.

"In case of an emergency, so declared by the affirmative vote of two-thirds of all the members of said council, or a majority of council plus one when the number composing such council is less than nine, the notice shall be published at least one week prior to the time fixed therein for opening bids."

Defendants rely upon the exception set forth in the above cited statute, alleging that the erection of an additional building in connection with the municipal electric plant is a purchase for its electric light works. The General Borough Act expressly provides that all contracts or purchases, except those referred to, involving an expenditure of over $500, shall be made, after due advertisement, with the lowest responsible bidder. This is a salutary

provision of the statutory law and numerous acts have been passed by the legislature to the same effect with regard to different municipalities. As stated by Judge Landis in Braungart et al. v. City of Lancaster et al., 41 Lanc. L. R. 541, quoting from Harris v. Philadelphia et al., 283 Pa. 496, 503:

"The legislative and municipal intent, under our statutes and ordinances passed to carry them into effect, are that there should be open and honest competition in bidding, so that fair prices should be procured".

It has been uniformly held in many decisions in this State that the statute providing a formal mode of creating municipal contracts is mandatory and that a contract failing to meet the requirements thereof is not enforceable against a municipality: See Nuebling et al., to use, v. Topton Borough, 323 Pa. 154, and the cases cited therein.

Plaintiffs cite Tragesser v. Cooper et al., 313 Pa. 10 (1933). It is not decisive as to the question of law involved in the case at bar. Mr. Justice Simpson held that under section 2511 of The General Borough Act, if, in the erection or alteration of public buildings, the entire cost of the work shall exceed $1,000, separate specifications must be prepared and separate bids received for the plumbing, heating, ventilating and electrical work, and separate contracts must be awarded to the lowest responsible bidder for each of said branches of work, except in cases where the successful general contractor's separate bids for these items are, in fact, the lowest received therefor. At page 15 of the opinion it is said:

"There is another paragraph of the Code, under the main title of 'Corporate Powers'; this is section 1202, clause LIII, headed 'Regulation of Contracts', which, however, obviously refers only to contracts to be made by the borough council. As to it, as also to section 2458, we are satisfied the provisions of section 2511 apply, whenever there is 'any public building' to be erected or altered. It was not necessary to repeat in the statute, the language of the public policy expressed in section 2511, whenever

reference is made to the erection or alteration of a public building. Being a public policy, it must be applied wherever it fits, and is not to be excluded unless the intention to exclude it is clearly made to appear."

Plaintiffs contend that the Tragesser case indicates a public policy favoring separate bids for separate branches of work to be constructed, and, therefore, it must be part of a larger policy requiring bids in the first instance. On the other hand, defendants state with regard to the Tragesser case:

"But it does not follow from this that competitive bidding is required for a general contract, not involving the features complained of in that case. Nor can the Tragesser decision be construed to mean that a general public policy requires competitive bidding for the general contract work on public buildings."

It is necessary to construe the word "purchases" as used in the pertinent section of The General Borough Act and its amendments. Words in a statute should be construed in their popular sense. In Commonwealth v. Wark Co., 301 Pa. 150 (1930), it is said:

". . . words in a legislative enactment are to be taken in their ordinary and general sense; and unless the act sufficiently explains or qualifies the terms so as to necessitate an interpretation out of the current and popular signification, they must be deemed to have been used by the legislature in the former sense."

The usual and reasonable meaning of the word "purchases" refers to a contract of buying and selling. To determine the necessity of competitive bidding compels a resort to the statute in question. Is the contract in the instant case within the provisions of the governing statute? If it is not a purchase, it must be concluded that competitive bids are essential to make it a valid contract. The statutory requirements then became mandatory and must be strictly construed. An analysis of the applicable section of the act indicates that the phrase "electric light" is an adjective modifying the word "works". Its meaning

is that purchases for water works, electric light works and other public works of a borough are exempt from the necessity of advertising for bids. On that basis defendants claim that the contract in dispute represents a purchase of "brick, steel, excavating, etc." This view might be tenable provided the improvement or addition to the existing public building was made by employes of the borough. It does not contemplate purchases for the erection of the building or buildings of the electric light plant or an addition thereto for a lump sum or contract price by a contractor. The contractor and not the borough purchases and pays for the materials in the prosecution of the public work. This liability is recognized in The General Borough Act, as amended by the Act of June 9, 1931, supra, sec. 13, which provides that it shall be the duty of every borough to require the contractor for the construction, erection or an addition to any public work where the amount of such contract is in excess of $500 to execute and deliver to the borough, in addition to any other bond required, an additional bond conditioned for the prompt payment of all material furnished and labor supplied or performed in the prosecution of the work.

In common parlance, to purchase a building does not purport erecting a building. Defendants contend that the purchase of a generator for electric light or current is legal without advertising for competitive bids: "why, then, not the building to house it?" If that be so, then it follows also that a borough can enter into a lawful contract for a building for that purpose at a cost of a million dollars without competitive bids. Statutory provisions requiring proposals for bids for certain municipal contracts should be construed and administered with special reference to the public interest. They will not be extended beyond their reasonable import: 3 McQuillin, Municipal Corporations, sec. 1286.

It appears that where an article needed by a municipality is made by one company only, and under the protection

of letters patent, it is not necessary to advertise for proposals: Silsby Mfg. Co. v. Allentown, 153 Pa. 319, 324. As stated in the opinion: "Competition under such circumstances was impossible. . . . The law does not insist on what is impossible, or absolutely useless."

The Act of May 4, 1927, P. L. 673, relating to purchases by boroughs, provides:

"That the borough authorities shall not be required to prepare specifications and advertise for the purchase of articles or parts thereof which are patented and manufactured products, apparatus, or appliances, nor in all such cases shall they be required to exact a bond: Provided, This act shall not apply to materials used in street improvements."

This, however, has no application to the erection of a public building. The building contracted for by the Borough of Ephrata with William H. Walters & Sons is of such a nature that it could have been constructed by any competent general contractor.

Under the law and the facts of this case the court is of the opinion that the word "purchases" used in The General Borough Act as aforesaid cannot be construed to mean the erection of the building in question, and, therefore, it was necessary for the borough authorities to advertise for competitive bids.

In view of the court's construction of The General Borough Act, requiring competitive bids for the additional public building, it is not necessary to consider the matter of the alleged abuse of discretion by the borough council.

### Conclusions of law

1. The Borough of Ephrata is a borough of the Commonwealth of Pennsylvania, subject to the provisions of The General Borough Act and its amendments.

2. The building proposed to be erected by the Borough of Ephrata is an addition to the existing electric light building and is considered a public building.

3. The written contract for the erection of said building is not a purchase for water, electric light or other public works of the borough, within the meaning of section 1202, clause LIII, of The General Borough Act, as amended.

4. Said contract is within the provisions of the section of The General Borough Act above cited, requiring publication of notice, acceptance of bids, and award thereof to the lowest responsible bidder.

5. The Borough Council of the Borough of Ephrata, in awarding said contract, failed to comply with the provisions of The General Borough Act.

6. The contract involved in this suit is void.

*Decree nisi*

And now, October 23, 1936, upon consideration of the foregoing cause, it is ordered, adjudged and decreed as follows:

1. That the written contract between the Borough of Ephrata and William H. Walters & Sons, of Philadelphia, Pa., for the erection and construction of a building addition to the municipal light plant of the Borough of Ephrata, is void and of no legal effect;

2. That defendants, Edwin E. Getz, John C. Willits, Warren H. Fake, John W. Eshleman, William B. Carter, J. Martin Bitzer, Ira E. Fasnacht and Edgar Shrom, councilmen constituting the Borough Council of the Borough of Ephrata, D. L. Hamaker, burgess of the Borough of Ephrata, and William H. Walters, Joseph E. Walters and Raymond J. Walters, partners trading as William H. Walters & Sons, its and their servants or agents, be restrained and enjoined from proceeding with the further execution of said written contract and from doing anything in pursuance or furtherance thereof;

3. That the Borough of Ephrata, and particularly Edwin E. Getz, John C. Willits, Warren H. Fake, John W. Eshleman, William B. Carter, J. Martin Bitzer, Ira E. Fasnacht and Edgar Shrom, councilmen constituting the

Borough Council of the Borough of Ephrata, and D. L. Hamaker, burgess of the Borough of Ephrata, defendants, be restrained and enjoined from paying any money or moneys whatever for work done under said written contract, or by reason thereof;

4. That the costs of this proceeding shall be paid by said Borough Council and burgess of the Borough of Ephrata from the funds of said borough.