Tragesser, Appellant, *v.* Cooper et al.

Argued October 2, 1933. Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

12

*Gifford K. Wright,* of *Alter, Wright & Barron,* with him *Forest G. Moorhead,* of *Moorhead & Marshall,* for appellant.

*Thompson Bradshaw,* of *May & Bradshaw,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 27, 1933:

Plaintiff appeals from a decree of the court below dismissing a taxpayer's bill in equity, filed by him on behalf of himself and all other taxpayers of the Borough of Ambridge, who may desire to join therein, against the water commissioners of the borough, the treasurer of the borough, and the Patterson Engineering Company, Inc., seeking to have decreed illegal and void so much of a contract, entered into by the water commissioners with the engineering company, for the erection of an additional building for the water works of the borough, as relates to the electrical work and heating work therein. The decree must be reversed.

The projected additional building is to be approximately 70 feet long and 54 feet wide, partly one and partly two stories in height, is to be used for housing a water filtration and water softening plant, and is to form an integral part of the water works system of the borough. The advertisements called for bids for its construction in an alternative form: First, separate bids for the various items of work, viz., (1) substructure and superstructure; (2) plumbing; (3) heating; (4) elec-

trical work; (5) filter equipment; (6) filtering and softening material; and (7) pumps; and, second, a separate lump sum bid for the entire cost of constructing the building.

The bids received by the water commissioners were referred to its engineers for tabulation and report, after the coming in of which, and advice from their counsel as to the legal questions involved, they made a contract with the engineering company to do the entire work for the amount of its lump sum bid of $111,700, although, as to the heating work and the electric work, there were separate bids by others, which were lower than those submitted by the engineering company. The right so to do was promptly challenged by the bill in equity herein, the relief sought being limited to the exclusion of those two classes of work from the contract.

The basis of appellant's objection is section 2511 of The General Borough Act of May 4, 1927, P. L. 519, 634, which provides that "In the preparation of specifications for the erection or alteration of any public building, when the entire cost of said work shall exceed $1,000, it shall be the duty of the architect, engineer, or person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and the borough shall receive separate bids upon each of the said branches of work and award the contract for the same to the lowest responsible bidder."

The substantial questions raised on this record are whether that section applies to the facts of this case, and, if so, whether or not it is constitutional. These were the only points considered by the court below, and will be the only ones passed upon by us. At the oral argument other questions were suggested, some of them by us; but a more mature consideration has led us to the conclusion that while they would be important, and perhaps controlling, if the question before us was whether or not the municipal authorities had exercised their discretion wisely, in awarding the contract as they

did, yet quite a different situation exists in cases like the present, where the point involved is whether or not they had any discretion whatever.

Section 2511 expresses a public policy, set forth not only therein but in a number of other statutes. See Separation Act of May 1, 1913, P. L. 155; chapter VI, article XVIII, section 11, of the Borough Code of May 14, 1915, P. L. 312, 384; section 1235, of the Township Code of July 14, 1917, P. L. 840, 946; section 563, of the County Code of May 2, 1929, P. L. 1278, 1361, and section 1906, of the Third-Class City Code of June 23, 1931, P. L. 932, 988. True, the attention of the court below does not seem to have been called to the fact that it was dealing with a question of public policy; but this does not prevent us from raising it ourselves, and determining the appeal in accordance with the public policy we thus ascertain to be controlling: Chester School District's Audit, 301 Pa. 203. It is a matter of no moment whether the courts agree or disagree with that public policy, for the question is a legislative and not a judicial one. That the legislature has the right, in the absence of a controlling constitutional provision, to direct what shall be done by one of its subordinate municipal divisions in the performance of its public duties, is, of course, no longer an open question, and is not challenged on this record.

Turning then to the questions which, as we have stated above, are the only ones to be passed on by us, we find that appellees' first contention is that section 2511 does not apply to the building now under consideration, but that the procedure in relation to it is governed by section 2458 of the same act, which is enacted under the title "Public Service" and subtitle "Commission of Water Works." It provides that "The commissioners shall prepare plans and specifications of all work to be performed and materials necessary for the repair, maintenance, and extension of such water works, or the erection of new water works; and shall, after plans and specifica-

tions for the extension or the erection of water works have been submitted to and approved by the sanitary water board, and a permit granted therefore by the board, invite proposals for the performance of such work and the furnishing of such materials; and shall let contracts therefor to the lowest responsible bidder, and shall take adequate security for the performance of such contracts."

There is another paragraph of the Code, under the main title of "Corporate Powers"; this is section 1202, clause LIII, headed "Regulation of Contracts," which, however, obviously refers only to contracts to be made by the borough council. As to it, as also to section 2458, we are satisfied the provisions of section 2511 apply, whenever there is "any public building" to be erected or altered. It was not necessary to repeat in the statute, the language of the public policy expressed in section 2511, whenever reference is made to the erection or alteration of a public building. Being a public policy, it must be applied wherever it fits, and is not to be excluded unless the intention to exclude it is clearly made to appear. Nothing in section 2458 has that effect.

Appellees next contend that the building under consideration is not a "public building" within the meaning of section 2511, which, they say, relates only "to public buildings where the public congregates, and where, therefore, their comfort, convenience and safety must be looked after." The very form of this statement presupposes that there are *other* public buildings than those specified, and tends to negative their argument upon this point. We may agree that adequate plumbing, heating and ventilating will do more good where a hundred people constantly congregate, than where but a few sometimes do, but that furnishes no reason for excluding the few from all benefit of the public policy embodied in the statute. Certainly it does not justify us in construing the *"any* public building" of section 2511, as meaning *some* public buildings only.

Nothing is gained by criticizing the location of a particular section in a statute of this kind, which is built up out of a large number of previously existing statutes, many of them likewise long. The final section of this statute repeals ninety-six specific acts. Every one who has had experience in drafting statutes of this kind, knows how meticulously careful the draftsman must be lest some important matter, not readily recognized as of moment, be lost sight of in the preparation of the new act, and realizes how easy it is, simply by transferring a section or clause from its location in the earlier statute to a different one in the new, to suggest that a seemingly different meaning should be given to it from that which it clearly had in the earlier statute. Section 2511, above quoted, and section 2512, which, of course, immediately follows it, both relate to plans and specifications of "any public building," are both in article XXV, entitled "Public Buildings and Works," and both must be construed, quoad the statute, to refer, as their words in fact state, to "any public building," that is, any building owned or to be owned by the borough and used or to be used for public purposes.

The Act of May 1, 1913, P. L. 155, commonly known as the Separation Act, which was the first of the statutes dealing with the subject under review, is substantially the same as section 2511, except that it had at the end thereof, after the words "lowest responsible bidder," the words "for each of said branches." Appellees argue from this that it must be assumed the omission of those words from the General Borough Code indicated a change of legislative thought, and hence the last clause of that section should be interpreted as if it read: "and shall 'award the contract for the same to the lowest responsible bidder' for the entire erection or alteration of any public building." To this we do not agree. If the legislature had been considering an amendment to the Separation Act, and not a Borough Code, much could be said for this contention, but, even then, the conclusion

would be only presumptively correct. As stated in End-lich on the Interpretation of Statutes: "Section 378. The presumption of a change of intention from a change of language, of no great weight in the construction of any documents, seems entitled to less weight in the con-struction of statutes than in any other case, for the variation is often to be accounted for......from the cir-cumstance that acts are [as here] often compiled from different sources. ...... Section 379. ...... The change would make no difference in the sense, when the omitted words of the earlier enactment were unneces-sary," as we think they are here.

As usual, it is contended, in the last resort, that to construe section 2511 as appellant claims, would cause it to offend against article III, section 7, of the state Con-stitution, which declares that "The General Assembly shall not pass any local or special law;......regulat-ing the affairs of counties, cities, townships, wards, bor-oughs or school districts;......[or] regulating labor, trade, mining or manufacturing," and also against the 14th Amendment to the Constitution of the United States. As usual, also, these contentions are without merit. The Borough Code is a general statute, applying to all boroughs, and hence is neither local nor special. How the 14th Amendment can by any possibility apply, we have not been told and do not know. In appellees' brief they say "If this court should find it necessary to dispose of these questions we ask the case to be set down for reargument, and we be permitted to file a brief there-on." . Possibly we might give heed to this unusual re-quest, if we could see how either of these constitutional provisions could possibly be applicable, but we cannot.

It is clear to us, therefore, that section 2511 is both constitutional and applicable, and when it says that, so far as concerns "the plumbing, heating, ventilating and electrical work......the borough shall receive separate bids upon each of the said branches of work and award the contract for the same to the lowest responsible bid-

der," it means just what it says, viz., that they shall be bid for separately and made part of a contract for the entire "erection or alteration" of public buildings in a borough, only when the successful general contractor's separate bids for these items are, in fact, the lowest received therefor. The decree of the court below is in antagonism to this conclusion, and hence must be reversed in so far as concerns the heating and electrical work, as to which others than the engineering company were the lowest responsible bidders. This, as we have shown, is all that plaintiff asks by the prayers of his bill, and as the engineering company has, by stipulation filed, expressly agreed to such a modification of its bid, the matter is one easy of accomplishment, unless, possibly, some of the bidders at this late date may refuse to comply with their bids. As this possibility exists, we will leave the final decree to be entered by the court below, after the changed facts, if any there be, are ascertained by that tribunal.

The decree of the court below is reversed at the cost of the Borough of Ambridge, and the record is remitted that the case may proceed to final decree in accordance with the views expressed in this opinion.