## MECHANICAL CONTRACTORS ASSOCIATION OF EASTERN PENNSYLVANIA, INC., Appellant,

v.

## SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1994.

Decided Jan. 10, 1995.

Stanley B. Edelstein, for appellant.

Alfred W. Putnam, Jr., for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

NEWMAN, Judge.

Mechanical Contractors Association of Eastern Pennsylvania, Inc. (Mechanical) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying its motion for summary judgment in an equity action brought to enjoin Southeastern Pennsylvania Transportation Authority (SEPTA) from proceeding with its construction of the Midvale Bus Maintenance Facility (Midvale facility) in the Nicetown section of Philadelphia.

The facts of this case are not in dispute. On April 27, 1993, SEPTA circulated an invitation to bid in which it solicited "design/build" [1] proposals for the construction of

---

1. Joseph F. Marchese, a senior program manager for SEPTA, described the design/build approach as comprising an accelerated process in which final design work on the project and construction work are combined into one bid package and the final design work and initial con-

the Midvale facility. In its invitation, SEPTA set forth its intention to issue a single contract to a successful bidder for the design and construction of the Midvale facility. The successful bidder then was responsible for complying with the requirements of the Separation Act.[2] Specifically, SEPTA required that:

> Contractor shall obtain separate bids from subcontractors for the plumbing, heating, ventilating and electrical work and *award the contract for each of such branches of work to the lowest* responsive and responsible bidder for each such branch. This Project must be handled in accordance with all applicable State laws on the issue of 'separate specifications'.

Contract Form at Page DB–10/91–15 of the Contract Documents, Reproduced Record at 113a.

On July 1, 1993, Mechanical, an incorporated association of contractors that perform plumbing, heating, ventilating and air conditioning work, initiated an equity action seeking to enjoin SEPTA from soliciting further bids. Contemporaneously, Mechanical also sought a preliminary injunction. Following a hearing on July 21, 1993, the trial court denied Mechanical's petition for a preliminary injunction. On October 12, 1993, Mechanical filed a motion for summary judgment, contending that SEPTA's invitation to bid violated the Separation Act. As a remedy, Mechanical requested that the trial court issue a permanent injunction preventing SEPTA from proceeding with the single bid.

The trial court, on December 31, 1993, denied the motion.

Because SEPTA did not file a cross-motion for summary judgment, the trial court could not enter a final order. Thus, Mechanical, pursuant to Pa.R.A.P. 1311(a),[3] filed a petition with this court asking for permission to appeal.[4] By order dated March 14, 1994, we granted Mechanical's petition.

The issue before this court is whether the Separation Act requires SEPTA, as a public entity, to solicit separate bids directly from plumbing, heating, ventilating and electrical contractors and award separate contracts to the lowest responsible bidders in each trade. Another way to state this issue is whether SEPTA may solicit bids for the award of a single design/build contract and delegate to the successful bidder the requirement of receiving separate bids and awarding separate contracts for each trade.[5]

Mechanical asserts that the language of the Separation Act requires that the public entity *directly* award separate contracts to the lowest responsible bidders for plumbing, heating, ventilating and electrical work. Relying on the language of the Separation Act that provides that "it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction or alteration of such public buildings ... to award the contract," Mechanical maintains that the public entity is the only person authorized to act under the section because

---

struction work overlap. Hearing of July 21, 1993 at 43–44.

2. The Separation Act is codified at 71 Pa.S. § 1618 and is entitled "An Act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings." It provides in pertinent part:

> Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilation, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the public buildings to receive separate bids upon each of the said branches of work, and to

award the contract for the same to the lowest responsible bidder for each of said branches. 71 Pa.S. § 1618.

3. Pa.R.A.P. 1311(a) provides:

> (a) General Rule. An appeal may be taken by permission under 42 Pa.C.S. § 702(b) (interlocutory appeals by permission) from any interlocutory order of a lower court or other government unit.

4. The trial court had certified its order pursuant to 42 Pa.C.S. § 702(b).

5. Our scope of review over a trial court's denial of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Commonwealth Ct. 99, 632 A.2d 1002 (1993).

only a public entity can award a contract for the construction of a public building.

Contrary to Mechanical's contentions, SEPTA argues that it is in compliance with the Separation Act. SEPTA maintains that it incorporated into its bid documents several provisions designed to ensure that the requirements of the Separation Act would be satisfied. Namely, SEPTA required that the successful bidder on the project be responsible for ensuring that the plumbing, heating, ventilating and electrical work was separately awarded to the lowest responsible bidders for each of these portions of work, subject to SEPTA's approval.

■ We begin our analysis with a recitation of the relevant section of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. Specifically, 1 Pa.C.S. § 1921 provides:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity of the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretation of such statutes.

1 Pa.C.S. § 1921.

Our review of the relevant language of the Separation Act indicates that it is ambiguous concerning who the contracting entity must be. From a reading of the statute, we cannot ascertain whether the public entity or a general contractor must be the person "authorized to enter into contracts for the erection, construction or alteration of such public buildings." Thus, we must apply the factors specified in 1 Pa.C.S. § 1921(c). After considering these factors, we conclude that SEPTA, as a public entity, is required to be the contracting party.

In adjudicating another matter that dealt with the Separation Act, Justice Ralph J. Cappy[6] set forth the necessity, objective and remedial nature of the Separation Act. Specifically, Justice Cappy wrote:

The legislature clearly intended to keep the expenditure of public funds a process open and clear of any possible manipulations. To remove that process outside the hands of the appointed public officials charged with the duty of expending such funds, would be to infringe the rights of the public. It is clear to this Court that by implementing a procedure whereby the general contractor decides which subcontractor is to receive the work, denies the public their right to be assured that the work is awarded free of personal interest, bias, and prejudice. Furthermore, The Separation Act was intended to protect the materialmen who ... would become subject to the whim of a dishonest or incompetent general contractor; not only in the procedures the general contractor adopted for the award of work, but also for payment of work done. Regardless of whatever bond would be supplied by a general contractor under the proposed procedure, materialmen and subcontractors need the protection guaranteed by the involvement of responsible public officials.

---

**6.** At the time of the decision (April 7, 1988), Justice Cappy was a trial judge of the Court of Common Pleas of Allegheny County.

*Metz v. Housing Authority of the City of Pittsburgh,* slip op. at 6, No. G.D. 88–01957 (Allegheny C.C.P.), *affirmed,* 121 Pa.Commonwealth Ct. 210, 550 A.2d 599 (1988), *petition for allowance of appeal denied,* 525 Pa. 607, 575 A.2d 571 (1990).

■ We agree with Justice Cappy and believe that the legislative purpose in enacting 71 Pa.S. § 1618 was, *inter alia,* to protect the plumbing, heating, ventilating and electrical contractors from the potential of dealing with unscrupulous general contractors. Thus, we conclude that requiring the public entity to be the direct contracting party with these contractors best accomplishes this intention, and we hold that the trial court erred in denying Mechanical's motion for summary judgment.

Accordingly, we reverse the order of the trial court.

### ORDER

AND NOW, January 10, 1995, we reverse the order of the Court of Common Pleas of Philadelphia County.

SMITH and FRIEDMAN, JJ., concur in the result only.