## TOWNSHIP OF O'HARA

v.

**CONDEMNATION OF a PERMANENT FEE SIMPLE INTEREST FOR PUBLIC PARK AND RECREATION AREA AND FACILITIES OF 4.65 ACRES, MORE OR LESS IN O'HARA Township, Allegheny County, Pennsylvania, Over Lands of the Most Reverend Donald W. Wuerl, Roman Catholic Bishop of the Diocese of Pittsburgh, Pennsylvania, Trustee and St. Mary's Roman Catholic Congregation of Sharpsburg, the real party in interest, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 2006.

Decided Nov. 9, 2006.

William P. Bresnahan, Pittsburgh, for appellants.

Alexander W. Saksen, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

The Most Reverend Donald W. Wuerl, Roman Catholic Bishop of the Diocese of Pittsburgh, Pennsylvania, trustee, and St. Mary's Roman Catholic Congregation of Sharpsburg, the real party in interest,[1] appeal from the order of the Court of Common Pleas of Allegheny County (common pleas), overruling their preliminary objections to the second amended declaration of taking filed by O'Hara Township (Township) in order to take and use a portion of St. Mary's property as a public park/athletic field. The primary issue on appeal is whether the Township has the authority to condemn church property, which is planned to be used in the future as a cemetery or mausoleum. After review, we affirm.

It appears undisputed that the Township, a home rule municipality,[2] constructed an athletic field and recreation facilities on property owned by St. Mary's. The

Township continued to use and maintain the field and facilities until 2001, when St. Mary's terminated the Township's use of the property.[3] Consequently, in 2003, the Township adopted Ordinance No. 1100, authorizing the condemnation and acquisition of 4.58 acres of St. Mary's property for use as a public park and recreation facilities, and then filed its declaration of taking pursuant thereto. The declaration at issue, the Township's second amended declaration of taking, was filed in August of 2005. As required by Section 402(b) of the Eminent Domain Code (Code),[4] 26 P.S. § 1–402(b), the Township averred in its declaration that the condemnation was authorized by the following authority: "the Home Rule Charter, 53 Pa. Cons.Stat. Ann. § 3181, et seq., and the First Class Township Code, 53 Pa. Con. Stat. Ann. § 56901, et seq. and § 53 Pa. Con. Stat. Ann. § 58001, et seq."[5] Second Amended Declaration of Taking at 1, Reproduced

1. Collectively referred to as St. Mary's.

2. Home rule municipalities are governed by the Home Rule Charter and Optional Plans Law (Home Rule Law), 53 Pa.C.S. §§ 2901—3171. Prior to adopting a home rule charter, the Township was governed by the First Class Township Code, Act of June 24, 1931, P.L. 1206, as amended, 53 P.S. §§ 55101—58502.

3. The parties disagree as to the grounds for termination. According to the preamble in the Township's ordinance authorizing the Township to condemn 4.65 acres of St. Mary's property, St. Mary's closed the facilities after it received a "minor grading citation." See Township Ordinance No. 1100, Reproduced Record (R.R.) at 59a. St. Mary's alleges, on the other hand, that it terminated the Township's use of the property "in order to prepare for the necessary expansion of the cemetery and construction of the mausoleum." St. Mary's appellate brief at 6. St. Mary's further avers that its current cemetery is nearing capacity and the condemned land is necessary for its expansion. Id. at 5. Further, St. Mary's alleges that, while the mausoleum has been planned since 1991, construc-

tion has been delayed due to a lack of funds. Id.

4. Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §§ 1–101—1–903. The Code was repealed on May 4, 2006 (Act No. 34 of 2006, to take effect in 120 days), and substantially reenacted at 26 Pa.C.S. § 101–1106. The repeal and reenactment have no bearing on this case.

We note that Section 402 provides, in relevant part, that the declaration of taking shall include: (1) a "specific reference to the statute, article and section thereof under which the condemnation is authorized"; and (2) a "specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized...." 26 P.S. § 1–402(b)(2) and (3).

5. It should be noted that there is no Section 3181 in the Home Rule Charter Law, and the First Class Township Code appears in Purdon's Statutes, not the Pennsylvania Consolidated Statutes. See footnote 2, supra. No one has raised any issue with regard to these omissions, however.

Record (R.R.) at 55a. In addition, the declaration also referenced Ordinance No. 1100.

St. Mary's filed preliminary objections to the second amended declaration, contending, *inter alia,* that the Township failed to comply with Section 402(b) of the Code because the Township failed to reference any statutory authority specifically authorizing the condemnation of cemetery property or burial grounds. St. Mary's also challenged the Township's power and authority to condemn its property, contending that "there is a strong policy in the [Commonwealth] against the condemnation of cemetery or burial grounds." Preliminary Objections to Second Amended Declaration of Taking at 3, R.R. at 50a. Common pleas found no merit in the preliminary objections and overruled them. In doing so, the court concluded that the Township complied with Section 402(b) in citing the Home Rule Law and First Class Township Code. Common pleas further concluded that, while some statutory provisions applicable to other types of governing bodies expressly prohibited the condemnation of cemeteries or burial grounds, the statutory provisions applicable here specifically authorized a first class township to condemn property for park and recreational purposes and did not prohibit the condemnation of church or cemetery property for that stated purpose. Accordingly, common pleas concluded that the Township had the authority to condemn St. Mary's property. The present appeal followed.

█ Before addressing St. Mary's appellate arguments, we note that the Emi-

nent Domain Code [Code] provides "'the exclusive procedure governing condemnation of property;' however, it does not 'enlarge or diminish the power of condemnation given by law to any condemnor.'" *Township of O'Hara v. Condemnation of an Easement and Right of Way,* 860 A.2d 1160, 1164 (Pa.Cmwlth.2004) (citing in part to Section 303 of the Code, 26 P.S. § 1–303). Moreover, if the power of the condemnor is challenged, the party opposing the condemnation bears the heavy burden of demonstrating that the condemnation is illegal. *Id.* at 1166–67.

█ On appeal, St. Mary's pursues the same arguments raised before common pleas. St. Mary's contends that the Township technically failed to comply with the procedural requirements of Section 402(b) of the Code because the statutory provisions referenced do not *expressly* authorize the condemnation of cemeteries and burial grounds. According to St. Mary's, this lack of express authority deprives the Township of the power to condemn its land, which it plans to use for cemetery/mausoleum purposes. Moreover, noting that some statutory provisions governing municipalities of a different class expressly prohibit the condemnation of church property or burial grounds, St. Mary's requests that we declare that there is a strong policy in the Commonwealth against condemnation of cemetery property and, further, conclude that condemnation of church/cemetery property is prohibited absent express authority to do so.[6]

Initially, we note that neither the parties, nor common pleas, place any significance on, nor even discuss, the Township's

---

**6.** St. Mary's raises a third argument, which is that the condemnation violates the free exercise clause of the First Amendment of the United States Constitution. As the Township notes, however, St. Mary's failed to raise this contention in its preliminary objections and,

therefore, the argument is waived. *See Middletown Twp. v. Lands of Stone,* 882 A.2d 1066 (Pa.Cmwlth.2005), *appeal granted and limited to a different issue,* 587 Pa. 138, 897 A.2d 1167 (2006).

election of a home rule charter. Rather, St. Mary's argument is premised solely on the lack of express statutory authority to condemn church/cemetery property in the First Class Township Code. Similarly, the Township focuses on the First Class Township Code, arguing that its action was statutorily authorized. Finally, common pleas, merely referencing the provisions cited by the Township in its declaration, found that the Township had authority to condemn private property for park/recreational purposes, including that owned by a church or used as a cemetery. Accordingly, as the parties do not raise any argument in this regard, we will not engage in any discussion of the relationship between the First Class Township Code and the Home Rule Law, the difference in powers conferred by each, and the applicability of each.[7] *But see In re Condemnation by the City of Coatesville*, 898 A.2d 1186 (Pa.Cmwlth. 2006) (noting some inconsistencies in our case law regarding applicability of Home Rule Law and prior governing municipal code provisions). We will, however, examine both to determine whether either authority prohibits the condemnation at issue.

We begin by noting that home rule charter communities have the broadest powers and may exercise any power and perform any function not denied by our Constitution, by statute or the governing home rule charter.[8] *See* Article IX, Section 2 of the Pennsylvania Constitution and Section 2961 of the Home Rule Law, 53 Pa.C.S. § 2961. *See also In re Condemnation by the City of Coatesville.* Moreover, the powers granted to home rule municipalities are to be liberally construed in favor of the municipality. *See* 53 Pa.C.S. § 2961. The only restriction that we can discern on a home rule municipality's eminent domain power appears in Section 2962(a), which provides:

> With respect to the following subjects, the home rule charter shall not give any power or authority to the municipality contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable to a class or classes of municipalities:
>
> . . . .
>
> (2) The procedures in the exercise of the powers of eminent domain and the assessment of damages and benefits for property taken, injured or destroyed.

53 Pa.C.S. § 2962(a). Thus, while the Home Rule Law prohibits a municipality from enacting its own procedural rules for condemning property and assessing damages associated therewith, the Home Rule Law, in and of itself, does not appear to place *any* specific restrictions on a municipality's power to condemn for public purposes. *Accord In re Condemnation by the City of Coatesville*, 898 A.2d at 1192 n. 13. Next, we examine the First Class Township Code (Township Code), the focus of everyone's arguments, to determine whether it authorizes the condemnation.

Section 1901 of the Township Code specifically authorizes the Township to condemn property for park and recreational purposes; that section provides, in pertinent part, that, in "the establishing of parks, playgrounds and recreation places

7. We do note, however, that in *Township of O'Hara v. Condemnation of an Easement and Right of Way*, 860 A.2d 1160 (Pa.Cmwlth. 2004), O'Hara Township, as it did in this case, cited both the Home Rule Law and First Class Township Code in its declaration of taking as authority for the condemnation. In determining whether the condemnation in that case was authorized, this court focused on the First Class Township Code.

8. No argument is being made here with regard to our Constitution nor to the Township's home rule charter.

... a township of the first class may enter upon, appropriate, injure or destroy private lands, property and material." 53 P.S. § 56901. The exercise of this authority, however, is limited by Section 1902, which provides:

> In addition to the restrictions made by other provisions of this act in particular cases, no township shall exercise the right of eminent domain as against land now occupied by any building which was used during Colonial or Revolutionary period as a place of Assembly by the Council of the Colony of Pennsylvania, the Supreme Executive Council of the Commonwealth of Pennsylvania, or the Congress of the United States; or as against the land occupied by any fort, redoubt, or blockhouse, erected during the Colonial or Revolutionary period, or any building used as headquarters by the Commander–in–Chief of the Continental Army; or as against the site of any building, fort, redoubt, blockhouse, or headquarters which are preserved for their historic associations and not for private profit....

53 P.S. § 56902. Thus, in taking property for parks and recreational purposes, the only prohibition contained in the general provisions is that against the use of land occupied by certain buildings used during the Colonial and Revolutionary period.

The taking of private property to establish parks and recreation areas is also specifically authorized by Section 3001 of the Township Code. That section provides:

> Townships may, separately or jointly, by ordinance dedicate and set apart lands not dedicated to other public uses or purposes, and may enter upon, appropriate, and acquire, by gift, devise, purchase, lease, or otherwise, private property, for the purpose of making, enlarging, and maintaining public parks, recreation areas and facilities.
>
> Townships may construct and equip new facilities upon such lands and may levy and collect such taxes or special taxes as may be necessary to pay for the same and make appropriations for the construction, improvement, maintenance, care, regulation and government of the same....

53 P.S. § 58001. Again, no limitation on the use of church or cemetery property is included. Notably, prior to 1953, Section 3001 expressly prohibited the condemnation of any property "belonging to or used as a cemetery or place of public worship, or any public or parochial school, or other educational or charitable institution or seminary." *See* Historical Notes to Section 3001. Moreover, the General Assembly has expressly restricted first class townships from condemning church and cemetery property in laying out and opening roads and erecting public buildings, such as town halls, firehouses and jails. *See* Sections 2006 and 2803 of the Township Code, 53 P.S. §§ 57006 and 57803, respectively.[9]

■ In construing statutes, we must give effect to legislative intent as statutorily expressed; we cannot supply omissions,

---

9. As noted by St. Mary's, the General Assembly has enacted other statutory provisions, applicable to other governing bodies, which prohibit the exercise of eminent domain against property owned by a church or used as a burial ground. *See e.g.,* Section 2402 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 2402 (prohibiting exercise of eminent domain against, inter alia, church property, graveyards and cemeteries); Section 721 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–721 (prohibiting school board from taking for school purposes any burial ground or land belonging to unincorporated church, incorporated or unincorporated religious association).

especially where it appears that such omission is intentional, nor adopt an interpretation that renders statutory language mere surplusage. *See generally Mountain Vill. v. Bd. of Supervisors of Longswamp Twp.*, 582 Pa. 605, 874 A.2d 1 (2005); *Popowsky v. Pa. Pub. Utility Comm'n*, 869 A.2d 1144 (Pa.Cmwlth.), *appeal denied*, 586 Pa. 761, 895 A.2d 552 (2006).

Here, the Generally Assembly has specifically chosen to prohibit the condemnation of church and cemetery property in limited circumstances. In authorizing first class townships to condemn private property for park and recreational purposes, the legislature did not prohibit the use of church and cemetery property, as it has done in other situations. The fact that the legislature prohibited only the taking of land with buildings used during the Colonial and Revolutionary period implies that other types of private property, such as that owned and used by churches, is not excluded. *See generally Popowsky v. Pa. Pub. Utility Comm'n*, 869 A.2d at 1159 (explaining maxim *expressio unius est exclusio alterius* or, the inclusion of a specific matter in a statutory provision implies the exclusion of others). Thus, we conclude that the Township was statutorily authorized to condemn St. Mary's property, notwithstanding the absence of express authorization to condemn property of this nature. To conclude otherwise would not only clearly constitute judicial legislation, but would render those instances where the legislature has expressly prohibited the taking of church and cemetery property mere surplusage. Further, while there is no need to resort to other principles of statutory construction because the Township Code is clear,[10] we note that a change in statutory language ordinarily demonstrates a change in legislative intent. *Meier, M.D. v. Maleski*, 670 A.2d 755 (Pa. Cmwlth.1996), *aff'd per curiam without op.*, 549 Pa. 171, 700 A.2d 1262 (1997). Thus, the legislature's deletion of the former prohibition against condemnation of church and cemetery property when establishing parks and recreational areas supports our construction that such is not currently prohibited. Accordingly, the Township's condemnation of St. Mary's property is proper under both the Home Rule Law and the Township Code. Therefore, we find no merit to St. Mary's arguments.

The order of common pleas is affirmed.

### *ORDER*

AND NOW, this 9th day of November, 2006, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby AFFIRMED.

---

**10.** *See* 1 Pa.C.S. § 1921(c) (considerations for ascertaining legislative intent when statutory language not explicit).