**PHILIPS BROTHERS ELECTRICAL CONTRACTORS, INC., Petitioner**

v.

**PENNSYLVANIA TURNPIKE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Nov. 24, 2008.

942 ■

Barbara Sumple–Sullivan, New Cumberland, for petitioner.

Shanon S. Levin, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

We are asked whether a prospective bidder may file a bid protest under the Commonwealth Procurement Code[1] one year *prior* to the contracting agency's anticipated solicitation of bids. The Pennsylvania Turnpike Commission (Contracting Agency) denied the bid protest of Philips Brothers Electrical Contractors, Inc. (Prospective Bidder), which challenged the Agency's determination that a proposed new turnpike maintenance facility is not a public building subject to the Separations Act.[2] Contracting Agency determined the

---

1.  62 Pa.C.S. §§ 101–4604.

2.  Act of May 1, 1913, P.L. 155, *as amended,* 71 P.S. § 1618. The Separations Act provides:

bid protest was not ripe for review. It also concluded the facility is not a public building. On appeal, Prospective Bidder assigns error in Contracting Agency's conclusion the facility is not a public building subject to the Separations Act. Notwithstanding Prospective Bidder's interesting argument on the merits, we are compelled to dismiss the petition for review for lack of an actual controversy at this time.

The fully developed record in this matter reveals the following. On September 12, 2007, Prospective Bidder inquired with Contracting Agency whether its project bid for construction of the $20 million Plymouth Meeting Maintenance Facility (Facility)[3] sought a single, general contractor bid or separate bids from prime contractors for electrical, mechanical and/or plumbing work. Reproduced Record (R.R.) at 27a. Contracting Agency responded the proposed bid sought a single contractor inasmuch as the Facility is not a public building. *Id.* at 28a. Importantly, the project description, below, indicates Contracting Agency anticipates soliciting bids in the fourth quarter of 2008.

[I]n the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilation, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.

3. Relevantly, the project description is as follows:

Location: Plymouth Twp. PA **(Montgomery Co.)** PA Tpke
Value: **$20,000,000**

The parties exchanged further correspondences which ultimately resulted in Prospective Bidder's December 12, 2007, formal bid protest. The bid protest averred:

The proposed construction bidding process is in violation of the Separations Act. The proposed construction being bid includes the erection of public buildings and separate bids for primary contractors [are] mandated by statute.

Please review this protest in accordance with the procedure set forth in [the Commonwealth Procurement Code, 62 Pa.C.S. § 1711.1].

R.R. at 33a.

Contracting Agency denied Prospective Bidder's bid protest as premature because Agency has not requested bids or established a bid opening time. *See* Contracting Agency Dec., 2/8/08. Nevertheless, Contracting Agency also addressed the merits of the bid protest. It rejected Prospective Bidder's assertions the term "public building" should be interpreted to mean "publicly owned building" and ac-

Bid Type: **Competitive Public Bids**
Update: **Construction Documents Under Way.** *Bidding Possible Fourth Quarter 2008*
Owner: **PA Turnpike Commission**
. . .
Use: Office Space, Storage Spaces, Vehicle Repair Space, Industrial Drive–Through Vehicle Wash, Lunchroom, Locker Rooms, Server/ Communications Room, Mechanical and Electrical Spaces, Salt Storage, Anti–Skid Storage, and Mixing Facility, Calcium Chloride Storage and Dispensing, Gas, Diesel, and Propane Fleet Fueling Stations, Unheated Vehicle Storage Building, Open Storage Yard, Vehicle Impound Lot, District Maintenance/Stores, Electrical, Carpentry, Plumbing, and Welding Trade Shops, Garage Space, Conference Space, Parking Lot, Restrooms
Reproduced Record (R.R.) at 11 (second emphasis added).

cepted the more restrictive meaning of "a building open to the public." *Id.* at 3. Consequently, Contracting Agency determined the Facility is not a public building subject to the Separations Act because it is not intended for public use.[4]

Prospective Bidder appeals.[5] Relying on Supreme Court precedent,[6] Prospective Bidder asserts error in Contracting Agency's application of a narrow definition to the term. It urges any building constructed with public funds and for the public benefit is a public building for purposes of the Separations Act. Here, there is no dispute the public funds will be used for construction of the $20 million Facility, and the costs exceed the Separations Act's $4,000 statutory threshold. Further, it is irrelevant whether the Facility will be open to the public; the proper inquiry is whether the building benefits the public. Prospective Bidder claims Contracting Agency has applied its narrow definition of public building to other proposed projects in order to thwart compliance with the Separations Act.

For its part, Contracting Agency maintains the Separations Act does not define "public building," and the Court precedent upon which Prospective Bidder relies provides a circular definition of the term so as to leave its meaning unresolved. Contracting Agency therefore relies on the Statutory Construction Act of 1972[7] to adopt the following definition of public building: "A building that is accessible to the public; [especially] one owned by the government." Black's Law Dictionary, 1243 (7th ed. 1999). As further support, Contracting Agency contends use of the word public in the Separations Act would be redundant if the General Assembly intended the Act to apply to all Commonwealth-owned buildings. *See Twp. of O'Hara v. Condemnation of Permanent Fee Simple Interest for Pub. Park & Recreation Area & Facilities of 4.65 Acres, more or less in O'Hara,* 910 A.2d 166 (Pa.Cmwlth.2006), *appeal denied,* 592 Pa. 763, 923 A.2d 412 (2007) (court should not interpret statute so as to render statutory language as mere surplusage).

■ Despite our serious concerns with Contracting Agency's interpretation of the term "public building," we must first ad-

---

**4.** In its decision, Contracting Agency reviews the purpose of the Separations Act and states the protection of the public is not needed here because the public will not be invited to the Facility. Contracting Agency Dec., 2/8/08, at 6. Actual physical harm, however, is not the type of public harm envisioned by case law. As observed in *Mechanical Contractors Association of Eastern Pennsylvania, Inc. v. Southeastern Pennsylvania Transportation Authority,* 654 A.2d 119 (Pa.Cmwlth.1995), the legislature intended to keep the expenditure of public funds a process open and clear of possible manipulations. "To remove that process outside the hands of the appointed public officials charged with the duty of expending such funds, would be to infringe the rights of the public." *Id.* at 121 (citation omitted). "It is clear ... that by implementing a procedure whereby the general contractor decides which subcontractor is to receive work, denies the public their right to be assured that work is awarded free of personal interest, bias, and

prejudice." *Id.* The public protection is therefore integrity in the distribution of public monies.

**5.** We must affirm a determination of the purchasing agency unless the Court finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law. 62 Pa.C.S. § 1711.1(i).

**6.** *See Tragesser v. Cooper,* 313 Pa. 10, 16, 169 A. 376, 378 (1933), where the Supreme Court defined the term public building for purposes of the Separations Act as "any building owned or to be owned by [a government entity] and used or to be used for public purposes."

**7.** *See* 1 Pa.C.S. § 1903 (words and phrases should be construed according to their common and approved usage).

dress the threshold determination that the bid protest is not ripe. We conclude that we must forestall a full merits review because Prospective Bidder's December 2007 bid protest is premature.

■ The Procurement Code establishes a system of competitive bidding under which construction contracts are to be awarded. 62 Pa.C.S. §§ 901–907. The statutory mandate of competitive bidding is grounded in sound public policy; in addition to securing work at the lowest responsible price, competitive bidding invites competition and guards against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts. *Premier Comp Solutions, LLC v. Dep't of Gen. Servs.*, 949 A.2d 381 (Pa. Cmwlth.2008).

To that end, the Procurement Code sets forth procedures to challenge the solicitation or award of a contract allegedly in violation its provisions. *See* 62 Pa.C.S. § 1711.1; *MSG Group, Inc. v. Dep't of Pub. Welfare*, 902 A.2d 613 (Pa.Cmwlth. 2006). In pertinent part and with added emphasis, the Procurement Code provides:

(a) **Right to protest.**—A ... prospective bidder ... *that is aggrieved in connection with the solicitation* or award of a contract, except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals), may protest to the head of the purchasing agency in writing.

(b) **Filing of protest.**—*If the protestant is a ... prospective bidder or offeror, a protest shall be filed with the head of the purchasing agency prior to the bid opening time or the proposal receipt date.* If the ... prospective bidder ... fails to file a protest or files an untimely protest, ... the prospective bidder ... shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum. Untimely

filed protests shall be disregarded by the purchasing agency.

62 Pa.C.S. § 1711.1(a) and (b).

Here, Prospective Bidder argues Contracting Agency does not contest it is creating single bid specifications for construction of the Facility or that it intends on soliciting single contract bids. Further, it asserts hardship due to its inability to bid on the Facility and to plan future work and bonding allocations. For these reasons, Prospective Bidder urges the matter is ripe for review.

■ The doctrine of ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. *Texas Keystone, Inc. v. Pa. Dep't of Conservation & Natural Res.*, 851 A.2d 228 (Pa.Cmwlth.2004). The doctrine insists on a concrete contest, where there is a final agency action so that the courts can properly exercise their function. *Id.* Court rulings applying the ripeness doctrine are premised on policies of sound jurisprudence; courts should not give answers to academic questions, render advisory opinions, or make decisions based on assertions of hypothetical events that might occur in the future. *Phila. Entm't & Dev. Partners, L.P. v. City of Phila.*, 594 Pa. 468, 937 A.2d 385 (2007).

Our Supreme Court recently addressed the ripeness doctrine in *Township of Derry v. Pa. Dep't of Labor & Industry*, 593 Pa. 480, 482, 932 A.2d 56, 57–58 (2007):

In deciding whether the doctrine of ripeness bars our consideration of a declaratory judgment action, we consider "whether the issues are adequately developed for judicial review and what hardships the parties will suffer if review is delayed." *Alaica v. Ridge*, 784 A.2d 837, 842 (Pa.Cmwlth.2001) (quoting *Treski v. Kemper Nat'l Ins. Co.*, [449 Pa.Super. 620, 674 A.2d 1106, 1113

(1996)]). The factors we consider under our "adequately developed" inquiry include: whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the amount of fact finding required to resolve the issue; and whether the parties to the action are sufficiently adverse. *Id.* Under the "hardship" analysis, we may address the merits even if the case is not as fully developed as we would like, if refusal to do so would place a demonstrable hardship on the party. *Id.*

Assuming this discussion of ripeness in a declaratory judgment action applies here to overcome an express statutory time frame for bid protests, we must consider whether the matter is adequately developed for review and what hardships the parties will suffer if review is delayed.

This Court agrees with Prospective Bidder that the current matter is adequately developed for judicial review. The record contains Prospective Bidders' protest, its brief in support of protest, which includes a proposed advertisement for solicitation of bids, and Contracting Agency's rationale for denial of the bid protest. The parties' positions are further developed in their appellate briefs.

We cannot agree, however, the requisite harm occasioned by delay in review is present. Prospective Bidder complains it cannot bid on the Facility because it is not a general contractor and it cannot properly project future work and allocate its bonding limits. While the alleged harms may be true, they pertain to the merits and not to delayed review.[8]

Remedies in the Procurement Code support the conclusion that Prospective Bidder suffers no demonstrable hardship if review is delayed until the time frame set forth in the statute. As soon as Contracting Agency solicits bids, and before the time set for opening bids or the proposal receipt date, Prospective Bidder may file a second bid protest. It may reassert its claims before this Court if Contracting Agency again denies its bid protest. 62 Pa.C.S. § 1711.1(g). On appellate review, this Court may cancel the solicitation or award, or declare any resulting contract void. *Id.* at § 1711.1(j). Thus, the Procurement Code provides a complete remedy upon timely review; therefore, we discern no demonstrable harm to the parties if review is delayed.

We are reluctant to disturb the express statutory time frame for bid protests under these conditions. Accordingly, the petition for review is dismissed.

SMITH–RIBNER, J., dissents and files opinion.

### ORDER

AND NOW, this 24th day of November, 2008, the petition for review is **DISMISSED** as premature.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I strongly dissent from the majority's decision to dismiss as premature Philips Brothers Electrical Contractors' (Philips Brothers) petition for review of the final determination by the Pennsylvania Turnpike Commission denying as unripe Philips Brothers' protest to notice of the planned solicitation for bids to construct the Commission's Plymouth Meeting Maintenance Facility (Facility). Although the majority

---

8. Prospective Bidder also asserts harm to Commonwealth taxpayers if review is delayed in the form of increased construction and material costs, and expenses incurred in another bid protest. However, all citizens have an interest in Contracting Agency's compliance with the law.

agrees that the matter is adequately developed for judicial review, it nevertheless dismisses the petition for review because in its view Philips Brothers will suffer no harm if review is delayed until bids are solicited and a second protest is filed in accordance with the Commonwealth Procurement Code, 62 Pa.C.S. § 1711.1. The Commission correctly treated Philips Brothers as a prospective bidder under Section 1711.1(a), (b), requiring protests to be filed *prior* to a bid opening date or proposed bid receipt date. It also *treated the protest as ripe* for purposes of discussing the merits and ruling against Philips Brothers.

In the determination denying the protest, the Commission's Deputy Chief Counsel described the wholesale relocation of the Facility from its present location next to the Plymouth Meeting Mall to a more remote area more easily connected to the Pennsylvania Turnpike. The Facility will consist of a building to house an office, a lunchroom and employee restroom/locker room; a vehicle repair area; a separate building for storage of materials used by tradesmen; a salt dome and mixing area; a truck garage; and a gas fueling area. In its September 14, 2007 letter to counsel for Philips Brothers, the Commission stated that the "bid for [the proposed construction] is for a single, general contractor because the buildings to be constructed under this contract are not public buildings." Reproduced Record at 28a. The Commission acknowledged that bids will be solicited in the last quarter of 2008. Based on its notice of the $20 million project, Philips Brothers protested that the proposed construction bidding process was in violation of the Separations Act, 71 P.S. § 1618, inasmuch as the proposed construction included erection of public buildings, and separate bids for prime contractors were required by law.

In analyzing the matter, the Deputy Chief Counsel stated that the first question to be answered in determining whether the Separations Act applies is whether the proposed construction is on Commonwealth owned property, and if the answer is yes then the next question to be answered is whether the construction is for a "public building." The Deputy Chief Counsel noted that the Separations Act did not define the term public building, and he then resorted to review and interpretation of prior decisions (*Tragesser v. Cooper,* 313 Pa. 10, 169 A. 376 (1933), and *Mechanical Contractors Association v. Senior Citizen Health Care Council,* 674 A.2d 752 (Pa. Cmwlth.1996)) to conclude that the Facility, albeit to be funded with $20 million of taxpayer dollars, is not a public building because among other things "the public is not encouraged nor invited to stop. Having the public in and around the facility is an invitation to trouble and even injury. Even the signs to the yards note that access is via 'Private Drive.'" Deputy Chief Counsel's Decision, at 5. He indicated that there are some buildings owned by the Commission and opened to the public, such as service plazas or police barracks, but eventually all interchange buildings will not be public buildings.

Despite having concluded that the proposed $20 million construction would not include "public buildings," the Commission held that the protest should be denied because Philip Brothers' claim was not ripe and even if its claim was ripe it lacked merit based upon the conclusion already reached by the Commission. Under these circumstances, there is absolutely no logical basis for holding that this matter is not ripe for review by the Court when the Commission has decided the merits going to the very heart of the protest, *i.e.,* that the Separations Act does not apply as the $20 million proposed construction does not include public buildings. Section 1618 of

the Separations Act mandates that when the entire cost of the construction of any public building exceeds $4000 "it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction ... of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches." The Commission has determined based on its interpretation that it can avoid the Separations Act and can proceed to solicit single, general contractor bids for the project.

Requiring Philips Brothers to file a second protest after a solicitation would be mere formality and a waste of agency and judicial time and energy. I readily agree that the ripeness doctrine is intended to avoid judicial involvement in abstract disagreements, *Gardner v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 658 A.2d 440 (Pa. Cmwlth.1995), but the doctrine is not to be applied to avoid ruling on the merits of a matter where the issues are sufficiently formulated and concrete so as to allow for judicial review. Philip Brothers' position "has crystallized to the point at which [the] court can identify [the] relatively discrete dispute." *Texas Keystone Inc. v. Pennsylvania Department of Conservation and Natural Resources*, 851 A.2d 228, 239 (Pa. Cmwlth.2004). The majority has erred in ruling otherwise.

The Pennsylvania Supreme Court's recent reversal of this Court in *Township of Derry v. Pennsylvania Department of Labor and Industry*, 593 Pa. 480, 932 A.2d 56 (2007), should offer some guidance when deciding whether to dismiss petitions for review as unripe. In Township of Derry this Court dismissed as unripe the appellant's petition for review challenging the Department of Labor and Industry's regulations that implemented an overly broad construction of the term "state-owned buildings" to include the buildings at the Milton S. Hershey Medical Center located in the township. The appellant argued that the regulations along with application of the Pennsylvania Construction Code Act, Act of November 10, 1999, P.L. 941, as amended, 35 P.S. §§ 7201.101—7201.1103, effectively displaced the ability of municipalities to review and to approve construction plans, to issue building permits and to collect fees with regard to the construction of certain non-Commonwealth buildings. The appellant identified particular construction projects at the Medical Center where local ordinances had not been followed. This Court declined to address issues raised in preliminary objections filed by the Department and the Medical Center based on application of the ripeness doctrine. It then dismissed the appellant's petition for review with prejudice.

The Supreme Court reversed. It agreed with this Court's statement in *Township of Derry* that when determining whether a matter is ripe for judicial review courts generally consider whether the issues are adequately developed and whether hardship will ensue to the parties if review is delayed. This Court also stated that under the hardship analysis, it might nonetheless address the merits even when a case is not as fully developed as the Court would like where declining to address the merits could place a demonstrable hardship upon a party, citing *Alaica v. Ridge*, 784 A.2d 837 (Pa.Cmwlth.2001). Notwithstanding its agreement with this statement of the ripeness doctrine, the Supreme Court held that this Court erred in dismissing the petition on ripeness grounds where allegations of the appellant's petition reflect an actual and ongoing

controversy and in considering hardship it is enough that the appellant has alleged major, ongoing construction activity being conducted within its borders outside of the local ordinance process.

I cite another reversal by the Supreme Court in *Insurance Federation of Pennsylvania, Inc. v. Commonwealth of Pennsylvania, Insurance Department*, 586 Pa. 268, 893 A.2d 69 (2006). In its original decision in the case, a majority of this Court dismissed the petition for review challenging an Insurance Department notice interpreting sections of the law regarding mandates against group health plans to provide certain treatment to patients who receive certification and referral from a licensed physician or psychologist. A majority of this Court concluded that adequate post-enforcement statutory review process existed and that the dispute was not ripe for judicial intervention. The dissent disagreed that the matter was not ripe for review, and on appeal from the dismissal the Supreme Court vacated this Court's order and remanded the case for this Court to consider the merits.

The Supreme Court's reversals of this Court along with observation of the appropriate standard of review in *Township of Derry* make it evident that the Commission's determination of Philip Brothers' protest is ripe for judicial review. An actual and ongoing controversy exists inasmuch as the Commission determined that the proposed $20 million construction will not involve public buildings and that it will proceed with solicitation of bids from single, general contractors rather than solicitations as mandated under the Separations Act. There are no disputed facts; rather, the matter merely requires application of case law to determine whether the Commission was correct in its self-created definition of "public buildings" to avoid application of the Separations Act. Also, the

determination harms Philips Brothers, a public works electrical contractor, because it cannot bid on the project under any circumstance. It is not a general contractor.

As the Supreme Court acknowledged in *Township of Derry* the harm occasioned there was the ongoing construction activity in the municipality outside of the local ordinance process. Here, the demonstrable harm to Philips Brothers is clear. I note also that putting off for another day resolution of the merits will only generate unnecessary litigation and added costs to the taxpayers. Thus because an actual and ongoing controversy exists, Philips Brothers properly filed its protest as allowed under Section 1711.1(b) and it will be demonstrably harmed by the Court's failure to decide the merits, I strongly dissent from the decision to dismiss the petition for review as unripe.