Lester Smiley, Jr., Robert C. Allen, Darl C. Ferguson, Jr. and Others Similarly Situated, Appellants *v.* Richard L. Lininger, Harris G. Breth and J. Harold McFadden, Commissioners of Clearfield County et al., Appellees.

Argued May 4, 1978, before Judges MENCER, ROGERS and DISALLE, sitting as a panel of three.

*Joan P. Feldman,* with her *Melvin Schwartz,* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellants.

*David E. Blakley,* with him *Blakley & Jones,* for appellees.

OPINION BY JUDGE ROGERS, June 20, 1978:

The appellants, Lester Smiley, Jr., Robert C. Allen and Darl C. Ferguson, Jr., have appealed an order of the Court of Common Pleas of Clearfield County dismissing their taxpayer's suit in equity against the Commissioners of Clearfield County (Commissioners),

the Clearfield County Industrial Development Authority (Authority), Community Medical Services of Clearfield, Inc. (Medical Services) and Hicks Construction Co., Inc. (Hicks).

On September 23, 1973, the County Commissioners conveyed a county nursing home facility to the Authority for the consideration of $1,100,000. The Authority in turn sold the facility to Medical Services by an installment sales agreement dated October 1, 1973 and executed December 17, 1973. The terms of this agreement provided, among other matters: (1) that the Authority should issue 1973 series bonds dated October 1, 1973 not in excess of $3,875,000 to raise funds necessary to acquire the nursing home from the county and to meet expenses for planned improvements and additions to the home; (2) that Pennsylvania Medical Services, Inc., of which Medical Services is a wholly owned subsidiary, would manage the nursing home pursuant to a management and consultant agreement it had entered into with Medical Services, and (3) that Medical Services would make scheduled monthly installment payments designed to retire the outstanding Authority bonds, with the added proviso that:

Upon completion of payment of all other required installment payments as required herein and the satisfaction of all [Authority] bonds . . . , [Medical Services] elects at its option to complete the sale contemplated herein, [Medical Services shall then pay the additional] lump sum of $20,000,000. In the event [Medical Services] at that time should decide not to complete its acquisition of the Project by making said lump sum payment, title will not be transferred and the Project shall remain the property of the [Authority].

Medical Services thereafter hired Hicks to perform the work involved in renovating the existing nursing home and constructing the additions thereto.

On August 27, 1974, a date after the sale of the Authority's bonds, appellants filed a taxpayer's complaint in equity against the Commissioners alleging that a number of Pennsylvania laws were violated in the transactions we have hereinbefore described. As a result of an order of the court below, the appellants filed an amended complaint on March 18, 1975 which named as additional defendants the Authority, Medical Services and Hicks.[1] No preliminary relief was ever sought. The appellants' original and amended complaints included requests for the following relief:

A. That [the court below] set aside the conveyance of the County Nursing Home to the Clearfield County Industrial Development Authority.

B. That [the court below] set aside the Installment Sales Agreement contract entered into by the Clearfield County Industrial Development Authority and Community Services, Inc.

C. That [the court below] order competitive and separate bids to be entered into for any and all construction work to be performed at the County Nursing Home.

. . . .

E. That [the court below] grant such other relief as it may deem appropriate.

After a hearing, the court below dismissed appellants' amended complaint on January 12, 1976, by which date all work on the nursing home project had been completed. This appeal followed. We affirm.

---

[1] By an order made July 22, 1975, the court below dismissed appellants' action as against Hicks.

The appellants first argue that the 1973 conveyance of the nursing home from the County to the Authority should be set aside because it was an unauthorized transfer under the then existing Sections 6(a) and 11 of the Industrial and Commercial Development Authority Law (Authority Law),[2] 73 P.S. §§376 (a), 381. Section 6(a) at that time permitted the Authority to acquire, hold, construct, improve, maintain, own, finance or lease *industrial or commercial* development projects. Section 11 provided that any municipality, including a county,[3] might transfer to the Authority property available for *industrial or commercial* development projects. The appellants say that a nursing home project was not an industrial or commercial project within the meaning of Sections 376(a) and 381. In support of their position, they note that nursing homes have been specifically authorized as "specialized projects" by 1975 amendments to the Authority Law and contend that this inclusion should compel the conclusion that nursing home projects were not permitted by the Authority Law before said amendments. Assuming the validity of this proposition, it provides no warrant for setting aside the transfer from the County to the Authority by a court of equity. The fact that the Authority was not empowered to engage in nursing home projects before the 1975 amendments to the Authority Law cannot alter the fact that the Authority is so authorized today. Section 6(a), *as amended*, provides that:

---

[2] Act of August 23, 1967, P.L. 251, *as amended*.

[3] Section 3 of the Authority Law, 73 P.S. §373, defines "municipality" as:

> [A]ny county, city, town, borough or township of the Commonwealth of Pennsylvania, each of which political subdivisions are separate incorporated municipalities of the Commonwealth of Pennsylvania for the purposes of this act.

(a) Every authority incorporated under this act shall be a public instrumentality of the Commonwealth and a public body corporate and politic, and shall be for the purpose of acquiring, holding, constructing, improving, maintaining, owning, financing and leasing, either in the capacity of lessor or lessee, industrial, *specialized* or commercial *development projects*. . . . (Emphasis added.)

Section 11, *as amended*, states that:

Any municipality may, and it is hereby authorized to sell, lease, grant, convey and transfer to any authority, any facilities, or any interest in real or personal property available for industrial, *specialized*, or commercial *development projects*. . . . (Emphasis added.)

Section 3 of the Authority Law, 73 P.S. §373, defines "specialized enterprise" to mean "an enterprise, other than an industrial enterprise or a commercial enterprise, which by its nature or size requires substantial capital [and] . . . includes . . . nursing homes. . . ." In light of the facts that the Authority's nursing home project is presently lawful under the Authority Law, that the Authority has issued the bonds to finance the nursing home project and that the project has in fact been completed, we see no useful or equitable purpose, and appellants suggest none, in somehow overturning the project on the ground of an illegality at its inception. Equity will deny relief to one seeking a decree which will not benefit him but which will work a hardship upon his adversary. *Bristol-Myers Co. v. Lit Brothers, Inc.*, 336 Pa. 81, 6 A.2d 843 (1939).

Next, the appellants say that the installment sales agreement between the Authority and Medical Services should be set aside because Section 3 of the Authority Law, 73 P.S. §373, requires that an "occupant" of an Authority project must be *"financially responsi-*

*ble* to assume all obligations prescribed by the Authority and this act in the lease, sale, and operation of a development project." (Emphasis added.) The appellants argue that Medical Services is not a financially responsible occupant. We disagree. The record establishes that Medical Services is a wholly owned subsidiary of Community Medical Services of Pennsylvania, Inc., which in turn is an affiliate corporation of American Medical Affiliates, Inc. The latter corporation has been active in the health care field since its incorporation in 1968. It owns and operates 18 skilled and intermediate care facilities located in Pennsylvania, New Jersey, Maryland, Alabama and Florida, and manages and operates five other non-owned facilities. The record further shows that Community Medical Services of Pennsylvania, Inc. entered into an agreement with Medical Services under which it will render management and consultant services in virtually every aspect of the nursing home project, including renovation, construction and the actual administration of the completed facilities. Uncontroverted testimony of the president of all three corporations, Morris Yoffy, also established that Community Medical Services of Pennsylvania, Inc. has loaned Medical Services $100,000 as operating capital. Finally, all three corporations have agreed, jointly and severally, to indemnify and hold harmless the Authority, County and bond underwriters from any loss or liabilities arising out of the misuse of any bond proceeds by Medical Services. We believe that the foregoing facts adequately establish that Medical Services was and is a financially responsible occupant of the nursing home project within the meaning of Section 373 of the Authority Law.

Finally, appellants say that the Authority violated Section 2317 of The County Code,[4] 16 P.S. §2317, by

---

[4] Act of August 9, 1955, P.L. 323, *as amended.*

failing to obtain separate bids for the plumbing, heating, ventilating and electrical work done by Hicks on the nursing home project. Section 2317 provides that:

In the preparation of specifications for the erection, construction and alteration of any public building, when the entire cost of such work shall exceed one thousand five hundred dollars ($1500), the architect, engineer or other person preparing such specifications shall prepare only the following separate specifications: (1) plumbing, (2) heating, (3) ventilating, (4) electrical work, (5) elevators and moving stairs, and (6) one complete set of specifications for all the other work to be done in such erection, construction and alteration. The *board of commissioners shall* receive separate bids upon each of the said branches of work and award the contract for each of said branches, including the balance of the work in addition to the plumbing, heating, ventilating and electrical work, and elevators and moving stairs. . . . (Emphasis added.)

The appellants' contention lacks merit for the reason that Section 2317 applies only to contracts entered into by a county. Section 3 and 6 of the Authority Law, 73 P.S. §§373, 376, describe the Authority as "a public instrumentality of the Commonwealth. . ."; it is not an instrumentality of Clearfield County. *See also Pittsburgh Public Parking Authority Petition,* 366 Pa. 10, 76 A.2d 620 (1950).

Our researches have produced the Act of May 1, 1913, P.L. 155, *as amended,* 71 P.S. §1618,[5] also providing for the separation of contracts in the following terms:

---

[5] The Act of May 1, 1913 formerly appeared at 53 P.S. §1501. *See Pittsburgh Public Parking Authority Petition, supra.*

Hereafter in the preparation of specifications for the erection, construction, and alteration of any *public building*, when the entire cost of such work shall exceed one thousand five hundred dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction or alteration of such *public buildings* and to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches. (Emphasis added.)

That the nursing home facilities were public buildings at the time the construction and renovation work was done is unquestionable. Although the facilities had been sold to Medical Services, a private enterprise, the sale was made by an installment sales contract under which title remained with the Authority, a public agency, until all installments and the final lump sum payments should be made by Medical Services. Also the Authority, not the Medical Services, provided funding for all the improvements to the nursing home. The question then is that of whether the Authority Law provides an exception to the Act of May 1, 1913, so as to permit the Authority to award all the work on the nursing home project without need for separate bidding. We find such in two provisions of the Authority Law. Section 6(a)(8) of the Industrial and Commercial Law, 73 P.S. §376(a)(8), gives Authorities formed under the Act the power:

(8) To enter into acquisition agreements providing for (i) the construction of . . . development projects by *either the authority or the occupant*. . . . (Emphasis added.)

Section 12(a) of the Act, 73 P.S. §382(a), provides that:

> (a) All construction, reconstruction, repairs or work of any nature made directly by any authority where the entire cost, value or amount of such construction, reconstruction, repairs or work, including labor and materials, shall exceed five thousand dollars ($5,000), except construction, reconstruction, repairs or work done by employes of said authority, or by labor supplied under agreement with any Federal or State agency, with supplies and materials purchased as hereinafter provided, shall be done only under contract or contracts to be entered into by the authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided: Provided, however, That where the authority is the legal title holder to the industrial, specialized, or commercial development project, and there exists an agreement whereby an occupant or an investor-developer will or can acquire legal title to the said project under the then certain terms and conditions, contracts for construction, reconstruction, repair, or work of any nature, or purchase of machinery and equipment, *may be awarded by the occupant or the investor-developer without regard to the limitations of this section 12.* And provided further, however, That for the purposes of this section 12, 'construction' or 'acquisition' shall not include acquisition of property for industrial, specialized, or commercial development purposes. . . . (Emphasis added.)

Under these provisions, the Authority was empowered to contract with the occupant of the nursing home

project, Medical Services, for all work to be done on the project, and Medical Services in turn could properly award such work without recourse to public bidding.

Order affirmed.

## ORDER

AND Now, this 20th day of June, 1978, it is ordered that the order of the Court of Common Pleas of Clearfield County be and is hereby affirmed.