MECHANICAL CONTRACTORS ASSOCIATION OF NORTHWEST PENNSYLVANIA; Western Pennsylvania Chapter, National Electrical Contractors Association, Inc.; International Brotherhood of Electrical Workers, Local 56; United Association, Local 47; S.M.A.C.N.A., Local 12 and Robert Steiner

v.

SENIOR CITIZEN HEALTH CARE COUNCIL OF ERIE COUNTY, PENNSYLVANIA, INC. and the City of Erie, Pennsylvania.

Appeal of SENIOR CITIZEN HEALTH CARE COUNCIL OF ERIE COUNTY, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.
Decided April 10, 1996.

Evan E. Adair, for Appellant.

William Taggart, for Appellee.

Before COLINS, President Judge, SMITH, J. and RODGERS, Senior Judge.

COLINS, President Judge.

Senior Citizen Health Care Council of Erie County, Pennsylvania (Council) appeals the December 30, 1994 decision of the Court of Common Pleas of Erie County (Common Pleas) ordering Council to alter specifications in its invitation to bid and to readvertise the invitation to bid in accordance with Section 1909 of The Third Class City Code (Code),[1] requiring separate specifications for alterations to public buildings.

In 1994, Council purchased property on Peach Street in the City of Erie (City) for use as its future headquarters, its existing headquarters having been sold, forcing Council to relocate. Facing a June 1995 deadline, Council approved specifications for renovation of the Peach Street property to accommodate Council's needs. In November 1994, Council advertised the specifications soliciting bids from general contractors.

Council planned to pay for the renovations in part with borrowed funds and in part using a federal community development block grant (HUD grant). The City, as grant recipient, was responsible for administering the grant and ensuring that Council, as subrecipient, complied with federal laws and regulations requiring competitive bidding, equal employment opportunity, and compliance with federal labor standards, and others.

In December 1994, Mechanical Contractors Association of Northwest Pennsylvania and others (collectively, Contractors) filed suit in equity asking Common Pleas to declare Council's renovation project subject to the Separations Act, to enjoin Council from awarding the general contract, and to require Council to provide and advertise separate specifications for plumbing, heating, ventilation, electrical, and general contract work.

Common Pleas concluded that Council must offer bids and award contracts in accordance with the Separations Act. In support

---

1. Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 36909. Popularly known as the Separations Act, this requirement was originally enacted by the Act of May 1, 1913, P.L. 155, *as amended*, 53 P.S. § 1003; it was repealed in 1931 as to third class cities when the requirement was added to The Third Class City Code.

of its conclusion, the court noted that the City was instrumental in obtaining the HUD grant and remained responsible for administering Council's use of the funds. The court concluded that Council's Peach Street property was a public building for the purposes of the Separations Act because the building would be open to the public for public benefit and be paid for with public funds.

■ Our review of declaratory judgment is limited to determining whether the trial court's findings of fact are supported by substantial evidence or whether the trial court committed an error of law or abuse of discretion. *Hornstein Enterprises, Inc. v. Township of Lynn*, 160 Pa.Cmwlth. 72, 634 A.2d 704 (1993), *petition for allowance of appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994). In this appeal, Council asserts that Common Pleas erred in granting declaratory and injunctive relief because Contractors failed to establish a legal right that was threatened and a clear right to relief. Council argues that the trial court erred in concluding that Council's property was a public building for the purposes of the Code because Council is not a City agency or instrumentality and does not become one by virtue of having received federal funds.

■ In Section 1 of the general municipal law,[2] the General Assembly divided the Commonwealth's cities, by population, "for the purpose of legislation regulating their municipal affairs, the exercise of certain corporate powers, and having respect to the number, character, powers, and duties of certain officers thereof...." Section 1 of the Act of June 23, 1931, P.L. 932, provided "[t]hat the laws relating to cities of the third class be and the same are hereby amended, revised, and consolidated, as follow[ed]" the laws relating to cities of the third class.[3] The Code, by title and definition, applies only to cities meeting the requirements for classification as third class cities, Sections 101 and 107 of the Code, 53 P.S. §§ 35101 and 35107, and it sets forth those powers delegated by the legislature and procedures for their exercise. *See*

*e.g., Lancaster City Annexation Case (No. 1)*, 374 Pa. 529, 98 A.2d 25 (1953).

At issue in this case is Section 1909 of the Code, popularly known as the Separations Act, which provides, in pertinent part:

> In the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed ten thousand dollars, the architect, engineer, or other person preparing such specifications, shall prepare only the following separate specifications[:] (1) plumbing, (2) heating, (3) ventilating, (4) electrical work, (5) elevators and moving stairs, and (6) one complete set of specifications for all the other work to be done in such erection, construction and alteration.

53 P.S. § 36909. When applying the Separations Act, the initial inquiry is whether the erection, construction, or alteration is being done by, or on behalf of, the third class city, in this case, the City of Erie. The second requirement in applying the Separations Act is that the construction or alteration is to a public building.

■ The Separations Act does not apply to every public building in the City of Erie; the essential element is the City's ownership or control. "The words 'any public building' '... must be construed ... to refer ... to '... any building owned or to be owned by the borough and used or to be used for public purposes.'" *Pittsburgh Public Parking Authority Petition*, 366 Pa. 10, 17, 76 A.2d 620, 624 (1950) (quoting *Tragesser v. Cooper*, 313 Pa. 10, 16, 169 A. 376, 378 (1933)).

■ The parties do not dispute that the City has no ownership interest in the Peach Street property. Council operates the senior center as a private, non-profit corporation, and it purchased the Peach Street property as its future headquarters when faced with a deadline for leaving its former premises. Council took steps to renovate the Peach Street property; Council planned to pay for the renovations in part using grant funds available from the Department of Housing and Urban Development and in part using

---

**2.** Act of June 25, 1895, P.L. 275, *as amended*, 53 P.S. § 101.

**3.** See Historical Note following 53 P.S. § 53101.

borrowed funds. In the absence of City ownership, application of the Separations Act can be justified only if Council were acting on behalf of the City, or as the City's alter ego, in renovating the Peach Street property. *See e.g., Lycoming County Nursing Home Association, Inc. v. Prevailing Wage Appeal Board,* 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993).[4]

Common Pleas clearly erred when it applied the Separations Act on the grounds that the Peach Street property was open to the public and was secured through public funds administered by the City of Erie. The City's involvement in Council's renovations was limited to its role as administrator of the HUD grant; the City was acting on behalf of the federal government, which does not require separate contracts as a condition to use of the grant monies. Council's use of the HUD grant does not change its status from private, non-profit corporation to a government entity or its alter ego. Furthermore, as established in *Pittsburgh Parking Authority Petition,* a "public building" for the purposes of the Separations Act is one owned or to be owned and used by a government entity (or its alter ego) for a government-authorized public purpose.

Accordingly, we conclude that a private, non-profit corporation acting on its own behalf is not subject to the Separations Act by virtue of its acceptance of a City-administered HUD grant. The decision and order of the Court of Common Pleas of Erie County are reversed.

### ORDER

AND NOW, this 10th day of April, 1996, the decision and order of the Court of Common Pleas of Erie County in the above-captioned matter are reversed.

---

4. In *Lycoming County Nursing Home Association,* we held that the Commonwealth's prevailing wage law applied to a private, non-profit corporation (the Nursing Home Association) because it was incorporated by the acting county commissioners for the purpose of placing a new county nursing facility in the hands of a separate entity. As the alter ego of the County, the Association was held to be a "public body" for the purposes of the prevailing wage law.