# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

U.S. Venture, Inc.,               :
            Petitioner       :
                              :
          v.                 :
                              :
Commonwealth of Pennsylvania,  :
Department of Community and    :
Economic Development;         :
Commonwealth Financing Agency; and :
Scott D. Dunkelburger, Executive  :
Director of the Commonwealth    :
Financing Agency,            :   No. 78 C.D. 2019
             Respondents   :   Argued: October 2, 2019


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                   FILED: February 18, 2020

        U.S. Venture, Inc. (Petitioner) petitions this Court for review of the Pennsylvania Board of Claims' (Board) December 28, 2018 order (Board's Order) sustaining the Commonwealth of Pennsylvania (Commonwealth), Department of Community and Economic Development's (Department), Commonwealth Financing Authority's (CFA), and CFA Executive Director Scott D. Dunkelburger's (Dunkelburger) (collectively, Respondents) preliminary objections to Petitioner's statement of claim (Claim), and dismissing the Claim for lack of subject matter jurisdiction. Petitioner presents two issues for this Court's review: (1) whether the Board erred by ruling that it lacked subject matter jurisdiction over the Claim because a compressed natural gas (CNG) fueling station construction is not the type of

construction contemplated by the Commonwealth Procurement Code (Procurement Code);[1] and (2) whether the Board erred by ruling that it lacked subject matter jurisdiction over the Claim because its exclusive jurisdiction over contract claims is the only exception to sovereign immunity and its public purpose is to prevent Commonwealth agencies from reneging on contracts with impunity. After a thorough review, this Court affirms.

By October 24, 2014 correspondence (October Correspondence), the Department notified Petitioner that the CFA had approved Petitioner's applications for two grants (Grants) through "The Alternative and Clean Energy [(ACE)] Program" (Program), which provides grants for the development and construction of alternative energy projects in the Commonwealth pursuant to the Alternative Energy Investment Act.[2] The CFA awarded Petitioner a $643,389.00 Grant and a $547,047.00 Grant to aid in the construction of two publicly accessible CNG fueling stations – one to be located in Bethel Township, and the other in Falls Township. The October Correspondence listed 10 conditions, including "comply with the [Program] [g]uidelines; be responsible for seeking competitive bids for all work; submit any substantial change to an approved [p]roject for consent of the [CFA]; [and] maintain full and accurate records for the project and make them available for inspection by the [CFA] if requested." Board Op. at 1-2, Finding of Fact (FOF) 6.

The parties executed written agreements pertaining to the Grants. Respondents did not monitor the projects, and although the CFA's grant documents contained nondiscrimination policies and competitive bidding requirements, they did not provide any construction guidelines, plan specifications or provisions permitting Respondents to oversee the construction. It was Respondents' expectation that Petitioner would submit reimbursement claims upon project completion.

---

[1] 62 Pa. C.S. §§ 101–2311.
[2] Act of July 9, 2008, P.L. 1873, 73 P.S. §§ 1649.101-1649.2901.

In early 2017, Petitioner completed construction on both CNG fueling stations. Petitioner constructed the fueling stations on privately-owned land. Respondents have no ownership interest in the dispensing equipment used at the fueling stations and have no authority to participate in the CNG fueling stations' management or maintenance. Petitioner sought payment from Respondents. By July 31, 2017 letter (July 2017 Letter), Dunkelburger refused payment on Respondents' behalf, explaining, in relevant part:

> ACE funds were specifically awarded to pay construction costs incurred by [Petitioner]. Unfortunately, [Petitioner] did not incur construction costs, instead electing to lease the CNG equipment/station. Therefore, there are no eligible costs for the [Grants] to reimburse. Grant funds cannot be used to pay lease payments for the equipment, fund operations, and make grant-sharing payments to the landowner.
>
> The CFA was unaware that [Petitioner] had decided to lease the CNG equipment/station instead of owning it. The funding commitment letter provided in the original application stated that [Petitioner] would provide the matching funds. The application stated that the [G]rant funds would be used to purchase equipment and pay construction costs, not to make lease payments.
>
> In addition, the material provided by [Petitioner] does not indicate that a competitive bidding process was utilized for the selection of [one of the contractors] for each of the projects as required in the [G]rant agreement.

Reproduced Record (R.R.) at 111a.

On January 23, 2018, Petitioner filed the Claim with the Board alleging breach of contract and sought equitable relief, wherein Petitioner averred that it justifiably relied on Respondents' representations and promises and that Respondents would be unjustly enriched if permitted to deny Petitioner payment. On February 15, 2018, Respondents filed preliminary objections in the nature of a demurrer alleging

3

that the Board lacked jurisdiction over Petitioner's Claim and, thus, Respondents were immune from suit pursuant to the doctrine of sovereign immunity. On December 28, 2018, the Board's Order sustained Respondents' preliminary objections and dismissed Petitioner's Claim. Petitioner appealed to this Court.[3]

> Initially,
>
> > [t]he Board was established in furtherance of a public policy extending more than 200 years ago to allow claimants who ordinarily would have been barred by sovereign immunity to have a method of redress against the Commonwealth. The [Pennsylvania] Supreme Court in [*Employers Insurance of Wausau v. Department of Transportation*, 865 A.2d 825 (Pa. 2005),] construed the Board's equity jurisdiction under the Procurement Code and expounded on its legislative scheme as follows:
> >
> > > [The legislature] recognized that claims arising from contracts involving the Commonwealth could sound in both assumpsit and equity, and expressly provided that, regardless of form, these claims should be decided by the [Board]. It is thus readily apparent that Pennsylvania's legislative scheme intended to vest the [Board] with expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth . . . .
> >
> > *Wausau*, . . . 865 A.2d at 832-833.
> >
> > Pursuant to [Section 1928(b)(7) of the Statutory Construction Act [of 1972 (Statutory Construction Act),] 1 Pa.C.S. § 1928(b)(7), statutory provisions that decrease the jurisdiction of a court of record must be strictly construed.

---

[3]    In reviewing a Board decision[,] this Court [must] determine[] whether the Board committed an error of law, whether the necessary findings were supported by substantial evidence, or whether constitutional rights were violated. Our standard of review of an order sustaining preliminary objections based on an issue of law is *de novo*, and our scope of review is plenary.

*Lobar Assocs., Inc. v. Pa. Tpk. Comm'n*, 216 A.3d 526, 532 n.7 (Pa. Cmwlth. 2019) (citation omitted).

In *Armstrong School District v. Armstrong Educ[ation] Ass'n*, . . . 595 A.2d 1139, 1144 ([Pa.] 1991), the Supreme Court observed that 'if the scope of equity's common law jurisdiction was to have been diminished [by a statute], the language therein should have been . . . explicit. . . .' Additionally, in *Consumers Educ[ation] & Protective Ass'n v. Schwartz*, . . . 432 A.2d 173, 178 ([Pa.] 1981), the [C]ourt noted a well settled principle that 'when the Legislature itself seeks to depart from salutary public policy principles, it must express its intention to do so *explicitly*, and any power so granted will be *strictly construed*.' (Emphasis in original.)

*Dep't of Health v. Data-Quest, Inc.*, 972 A.2d 74, 78-79 (Pa. Cmwlth. 2009) (citation omitted).

Section 1724(a) of the Procurement Code, governing the Board's jurisdiction, provides in pertinent part:

Exclusive jurisdiction. — The [B]oard shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the [B]oard in accordance with [S]ection 1712.1 [of the Procurement Code, 62 Pa.C.S. § 1712.1] (relating to contract controversies).

62 Pa.C.S. § 1724(a). Thus, the Board generally has jurisdiction over claims arising from contracts entered into by a Commonwealth agency. "This Court has also broadly construed the Board's jurisdiction to include claims for damages on the theories of promissory estoppel and quasi-contract."[4] *Telwell, Inc. v. Pub. Sch.*

---

[4] Notwithstanding,

it has long been held in this Commonwealth that **the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract**, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.' *Third Nat[']l & Tr[.] Co[.] of*

*Emps.' Ret. Sys.*, 88 A.3d 1079, 1086 (Pa. Cmwlth. 2014); *see also Hanover Ins. Co. v. State Workers' Ins. Fund*, 35 A.3d 849 (Pa. Cmwlth. 2012); *Firetree, Ltd. v. Dep't of Gen. Servs.*, 978 A.2d 1067 (Pa. Cmwlth. 2009).

Section 102(a) of the Procurement Code provides, in relevant part, that the Procurement Code "applies to every expenditure of funds, other than the investment of funds, by Commonwealth agencies under any contract, irrespective of their source[.]" 62 Pa.C.S. § 102(a). Importantly, Section 102(f) of the Procurement Code specifies: "**This part does not apply to grants**. For the purpose of this part, a grant is the furnishing of assistance by the Commonwealth or any person, whether financial or otherwise, to any person to support a program." 62 Pa.C.S. § 102(f) (emphasis added). However, Section 102(f) of the Procurement Code provides an exception to the aforementioned exclusion: "**The term** ['**grant**'] **does not include an award whose primary purpose is to procure construction for the grantor. Any contract resulting from such an award is not a grant but a procurement contract**." *Id.* (emphasis added). Thus, if a grant's "primary purpose is to procure

_____

*Scranton v. Lehigh Valley Coal Co*[.], . . . 44 A.2d 571, 574 ([Pa.] 1945); *see also Schott v. Westinghouse Elec*[.] *Corp*[.], . . . 259 A.2d 443, 448 ([Pa.] 1969); *Wingert* [] *v. T. W. Phillips Gas & Oil Co*[.], . . . 157 A.2d 92, 94 ([Pa.] 1959) ('[The doctrine of unjust enrichment] applies only to situations where there is no legal contract.'); *Durham Terrace, Inc. v. Hellertown Borough Auth*[.], . . . 148 A.2d 899, 904 ([Pa.] 1959).

*Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (emphasis added). Although unjust enrichment may be invoked where a contract is unenforceable, *see Wingert*, in the instant matter, Petitioner's unjust enrichment claim arises from its performance pursuant to the award of the Grants, and grants are explicitly excluded from the Board's jurisdiction. *See, e.g., Brimmeier v. Pa. Tpk. Comm'n*, 147 A.3d 954 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017) (where Board jurisdiction excluded claims arising from employment contracts, promissory estoppel claims based on a purported employment agreement were barred by sovereign immunity); *see also Dubaskas v. Dep't of Corr.*, 81 A.3d 167 (Pa. Cmwlth. 2013). Thus, Petitioner's unjust enrichment claim is similarly barred.

6

**construction** for the grantor[,]" it is considered a procurement contract, and falls within the Board's jurisdiction. *Id*. (Emphasis added).

The Procurement Code defines "construction" as "[t]he process of building, altering, repairing, improving or demolishing any **public structure or building** or other **public improvements** of any kind to any **public real property**." 62 Pa.C.S. § 103 (emphasis added). Consulting both the dictionary and case law, the Board in the instant case determined that Petitioner's work under the Grants was not construction because the subject structures were not public, i.e., "publicly owned or controlled[.]" Board Op. at 23. Therefore, the Board dismissed Petitioner's Claim because the Grants were "not . . . award[s] whose primary purpose [was] to procure **construction** for the grantor." 62 Pa.C.S. § 102(f) (emphasis added).

Petitioner argues that the Board erred when it ruled that it lacked jurisdiction over Petitioner's Claim because the CNG fueling station construction was not the type of construction contemplated by the Procurement Code's definition. According to Petitioner, Section 103 of the Procurement Code is ambiguous because the term "public structure" is undefined in the Procurement Code and can mean both a publicly-owned structure and/or a "publicly accessible" one. Petitioner Br. at 16.

> With respect to statutory interpretation:
>
> Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

*Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1038 (Pa. 2017). "The polestar indication of the legislature's intent is the plain language of the statute. Accordingly, when interpreting statutory language, all '[w]ords and phrases shall be construed according to rules of grammar and according to their common and

7

approved usage.' 1 Pa.C.S. § 1903(a)." *Sugarhouse HSP Gaming, L.P. v. Pa. Gaming Control Bd.*, 162 A.3d 353, 375 (Pa. 2017) (citation omitted). "[Courts] generally use dictionaries as source material for determining the common and approved usage of a term." *Gmerek v. State Ethics Comm'n*, 751 A.2d 1241, 1260 n.26 (Pa. Cmwlth. 2000), *aff'd*, 807 A.2d 812 (Pa. 2002).

The Pennsylvania Supreme Court "ha[s] recognized that a statute is ambiguous where different interpretations of statutory language are **plausible**." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 743 (Pa. 2015) (emphasis added). The Supreme Court has further explained:

> Whether a statute is ambiguous cannot be determined in a vacuum.
>
> > A statute is ambiguous when there are at least two reasonable interpretations of the text. In construing and giving effect to the text, 'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.' *Roethlein v. Portnoff Law Assoc*[*s*]., . . . 81 A.3d 816, 822 (Pa. 2013) . . . . The United States Supreme Court also takes a contextual approach in assessing statutes and in determining predicate ambiguity. *See generally King v. Burwell*, __ U.S. __, 135 S.[ ]Ct. 2480, 2489, 192 L. Ed. 2d 483 ([] 2015) ('If the statutory language is plain, we must enforce it according to its terms. But oftentimes the meaning - or ambiguity - of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme.' (internal quotation marks and citations omitted))[.]
>
> *A.S. v. Pa. State Police*, . . . 143 A.3d 896, 905-906 ([Pa.] 2016) (some citations omitted, others modified).

8

*In re: Tr. Under Deed of Kulig*, 175 A.3d 222, 231-32 (Pa. 2017) (citations omitted). "It is only when the plain language of a statute is ambiguous that courts may resort to other tools of statutory construction in order to ascertain the General Assembly's intent." *Barnard v. Travelers Home & Marine Ins. Co.*, 216 A.3d 1045, 1051 (Pa. 2019); *see also Nardone*.

In support of its position that the Board erroneously interpreted the term "construction" to exclude publicly accessible structures on privately owned land and its argument that the term is ambiguous, Petitioner urges this Court to use the dictionary definition of the term "public," which means, *inter alia*, "[a] place open or visible to the public." Black's Law Dictionary 1422 (10th ed. 2014).[5] Petitioner contends that Pennsylvania courts have routinely applied this interpretation and cites to the following three cases in support thereof: *Commonwealth v. Miles*, 681 A.2d 1295 (Pa. 1996); *Limley v. Zoning Hearing Board of Port Vue Borough*, 625 A.2d 54 (Pa. 1993); and *Carney v. Penn Oil Co.*, 140 A. 133 (Pa. 1928).

However, in *Miles*, the Pennsylvania Supreme Court affirmed a guilty verdict and death sentence for a murder committed at a location that the Court simply referenced as a "public shopping center." *Id.* at 1305. The *Miles* Court made no further reference in the opinion to a "public shopping center" and did not engage in any analysis relevant to the instant matter.

In *Limley*, the Pennsylvania Supreme Court reversed this Court's order affirming a trial court decision that upheld a zoning hearing board (ZHB) decision revoking an occupancy permit issued to appellant to open a public restaurant and bar

---

[5] Notably, Black's Law Dictionary also defines "public building" as "[a] building that is accessible to the public; esp[ecially] one owned by the government." *Id*. at 1423. Further, it defines "public place" as "[a]ny location that the local, state, or national government maintains for the use of the public, such as a highway, park, or public building." *Id*. at 1426. Finally, it defines "public property" as "[s]tate- or community-owned property not restricted to any one individual's use or possession." *Id*. at 1412.

in a building that formerly housed a private club. Although the club's operation was a nonconforming use, the ZHB considered the premises' proposed use as a public restaurant and bar as a new, prohibited use rather than a continuing use. The *Limley* Court held:

> [T]he nature of a nonconforming use must be determined from the actual use to which the property is being put rather than from the identity of the users. Labeling the users as members and guests of a private club or as members of the general public is not determinative of the actual use of the premises.
>
> In short, although the proposed public use of the property may not be identical in every respect to its use as a private club, the public use is at least a very similar one.

*Limley*, 625 A.2d at 57. In *Limley*, the "public" reference was necessary to distinguish between the operation of a **private** club, and that of a privately owned restaurant serving food and drink to the public. Thus, although *Limley* demonstrates that the word "public" can be used to modify the word "restaurant," that case is not instructive to inform this Court regarding the legislative intent behind Section 103 of the Procurement Code.

Finally, *Carney* involved an appeal from a trial court's order enjoining as a nuisance the operation of a "public service gasoline and filling station" which the Court described as "a plant or service station for storage of gasoline and oils for sale to the public[.]" *Carney*, 140 A. at 134. The *Carney* Court affirmed the trial court's holding because evidence supported that the sale of gasoline to the public in the residential neighborhood disturbed the neighborhood's peace and quiet and constituted a public nuisance. Like *Limley*, *Carney* is not instructive regarding the General Assembly's intent in drafting Section 103 of the Procurement Code. Rather, *Carney* merely reflects that a "public service gasoline and filling station" that served the public was referenced using the word "public." *Carney*, 140 A. at 134.

10

Nonetheless, the aforementioned cases support Petitioner's contention that its "interpretation[] of statutory language [is] plausible." *Nardone*, 130 A.3d at 743. Accordingly, this Court concludes that the phrase "public structure or building" in Section 103 of the Procurement Code is ambiguous.

When, as here, the plain language of a statute is ambiguous, the Statutory Construction Act instructs:

> [T]he intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) **The former law, if any, including other statutes upon the same or similar subjects**.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c) (emphasis added). Further,

> [i]n ascertaining the intention of the General Assembly in the enactment of a statute[,] the following presumptions, among others, may be used:
>
> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
>
> (2) That the General Assembly intends the entire statute to be effective and certain.
>
> (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

11

(4) That **when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language**.

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S. § 1922 (emphasis added).

Respondents assert that the Board properly concluded it lacked jurisdiction because, similar to public structure, the term "'public building' has been consistently defined in the construction procurement context for decades[]" to mean government-owned. Respondents Br. at 12. In support, Respondents cite *Tragesser v. Cooper*, 169 A. 376 (Pa. 1933), where the Pennsylvania Supreme Court considered the phrase "any public building" in the context of Section 2511 of the General Borough Act of May 4, 1927, P.L. 519, 634 (General Borough Act). Section 2511 of the General Borough Act provided:

> In the preparation of specifications for the erection or alteration of **any public building**, when the entire cost of said work shall exceed $1,000[.00], it shall be the duty of the architect, engineer, or person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and the borough shall receive separate bids upon each of the said branches of work and award the contract for the same to the lowest responsible bidder.

*Tragesser*, 169 A. at 377 (emphasis added) (quoting Section 2511 of the General Borough Act). The *Tragesser* Court held that "any public building" meant "any building owned or to be owned by the borough and used or to be used for public purposes." *Tragesser*, 169 A. at 378.

Noting the similarity between the language in Section 2511 of the General Borough Act, the almost identical statute commonly referred to as the

12

Separations Act,[6] and other similar statutes addressing the expenditure of public funds for construction projects,[7] Respondents contend that the courts' interpretation

---

[6] Act of May 1, 1913, P.L. 155, *as amended*, 71 P.S. § 1618 (also classified as 53 P.S. § 1003).

> In May of 1913, the General Assembly enacted a statute, commonly referred to as the Separations Act, which governs the letting of certain contracts for the erection, construction, and alteration of any public building. Under the Separations Act, when the total cost of the project exceeds $4,000[.00], those who secure the plumbing, heating, ventilating, and electrical work are duty-bound to prepare separate specifications, receive separate bids, and award separate contracts to the lowest responsible bidder for each of these branches.

*Pa. Associated Builders & Contractors, Inc. v. Dep't of Gen. Servs.*, 932 A.2d 1271, 1273 (Pa. 2007) (citation omitted). "[N]othing in [the Procurement Code] repeals or modifies or supplants the Separations Act, except as explicitly stated in one of the [Procurement] Code's provisions[.]" *Id.* at 1274.

[7] With respect to the Separations Act:

> The legislature clearly intended to keep the **expenditure of public funds a process open and clear of any possible manipulations**. To remove that process outside the hands of the appointed public officials charged with the duty of expending such funds, would be to infringe the rights of the public. . . . [B]y implementing a procedure whereby the general contractor decides which subcontractor is to receive the work, denies the public their right to be assured that the work is awarded free of personal interest, bias, and prejudice. Furthermore, [t]he Separation[s] Act was intended to protect the materialmen who . . . would become subject to the whim of a dishonest or incompetent general contractor; not only in the procedures the general contractor adopted for the award of work, but also for payment of work done. Regardless of whatever bond would be supplied by a general contractor under the proposed procedure, materialmen and subcontractors need the protection guaranteed by the involvement of responsible public officials.

*Mech. Contractors Ass'n of E. Pa., Inc. v. Se. Pa. Transp. Auth.*, 654 A.2d 119, 121-22 (Pa. Cmwlth. 1995) (quoting *Metz v. Hous. Auth. of the City of Pittsburgh*, (C.C.P. Allegheny Cty., No.

of the term "public building" in those statutes should guide this Court to the conclusion that the "public structure or building" referenced in Section 103 of the Procurement Code means only a structure or building owned by the government. *Mech. Contractors Ass'n of Nw. Pa. v. Senior Citizen Health Care Council of Erie Cty., Pa., Inc.*, 674 A.2d 752, 755 (Pa. Cmwlth. 1996).

In *Mechanical Contractors*, the Senior Citizen Health Care Council of Erie County, Pennsylvania, Inc. (Council), a private, nonprofit corporation, sought review of a trial court decision ordering the Council to comply with former Section 1909 of the Third Class City Code[8] (Third Class City Separations Act), which

_____

G.D. 88-01957, filed April 7, 1988), slip op. at 6, *aff'd*, 550 A.2d 599 (Pa. Cmwlth. 1988)) (emphasis added).

> Similarly, regarding the Procurement Code, this Court has explained:

> Article 3, Section 22 of the Pennsylvania Constitution requires that the General Assembly shall maintain by law a system of competitive bidding under which all purchases of materials, printing, supplies or other personal property used by the government of this Commonwealth shall so far as practicable be made. '[T]he requirements for competitive bidding . . . , do not exist solely to secure work or supplies at the lowest possible price, but also have the 'purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts . . . and are enacted . . . not for the benefits or enrichment of bidders . . .' *Yohe v. [City of] Lower Burrell*, . . . 208 A.2d 847, 850 ([Pa.] 1965), adopting 10 McQuillan, Municipal Corporations § 29.29 (3d ed. 1950). **The obvious intent of the applicable statute is thus also to 'close, as far as possible, every avenue to favoritism and fraud in its varied forms**.' *Louchheim v. [City of] Phila[.]*, . . . 66 A. 1121 ([Pa.] 1907), quoting *Mazet v. City of Pittsburgh*, . . . 20 A. 693, [697] ([Pa.] 1890).' *Conduit [&] Found[.] Corp. v. City of Phila[.]*, . . . 401 A.2d 376, 379 ([Pa. Cmwlth.] 1979).

*Premier Comp Sols., LLC v. Dep't of Gen. Servs.*, 949 A.2d 381, 382 n.1 (Pa. Cmwlth. 2008) (emphasis added).

[8] Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 36909. The nearly identical statute at issue in *Mechanical Contractors* pertained to third class cities and was also commonly referenced as the Separations Act. For clarity, the Court shall refer thereto as the Third Class City Separations

required separate specifications for projects altering public buildings. The Council intended to pay for the project using both borrowed funds and a federal community development block grant (Federal Grant). The City of Erie (City) was the Federal Grant recipient and the Council was the sub-recipient. The trial court concluded that the subject building was a "public building" under the Third Class City Separations Act "because the building would be open to the public for public benefit and be paid for with public funds." *Mech. Contractors*, 674 A.2d at 754. On review, this Court explained that "[w]hen applying the [Third Class City] Separations Act, the initial inquiry is whether the erection, construction, or alteration is being done by, or on behalf of, the third class city . . . . The second requirement . . . is that the construction or alteration is to a public building." *Id.*

With respect to the first requirement, this Court recognized that the "City's involvement in Council's renovations was limited to its role as administrator of the . . . grant . . . on behalf of the federal government[.]" *Id.* at 755. Thus, the Court held that the Council's use of the grant money did not change its status to a government entity. Further, regarding the second requirement, this Court explained that "**a 'public building' for the purposes of the** [**Third Class City**] **Separations Act is one owned or to be owned and used by a government entity** (or its alter ego) for a government-authorized public purpose." *Id.* (emphasis added) (citing *In re: Pub. Parking Auth. of Pittsburgh*, 76 A.2d 620 (Pa. 1950)[9]); *see also Smiley v. Lininger*, 387 A.2d 1318 (Pa. Cmwlth. 1978).

_____

Act. That statute was repealed by the Act of November 24, 2015, P.L. 242, and reenacted at 11 Pa.C.S. § 11909.

[9] In *Public Parking Authority*, the Pittsburgh Public Parking Authority (Authority) requested the trial court to declare that the Separations Act was inapplicable to the Authority arguing that the Authority was a Commonwealth agency and statutes enacted by the General Assembly are not applicable to the sovereign. On appeal, the Pennsylvania Supreme Court held that the Separations Act applied to the Authority. The Court, *inter alia*, rejected the Authority's contention that the building's construction would not be a public building since they would be financed by private funds, stating:

Given the similarity of subject matter and statutory purpose, this Court agrees with Respondents that the proper interpretation of the term public structure as used in Section 103 of the Procurement Code should be consistent with Pennsylvania courts' interpretation of the term "public building" referenced in the aforementioned Separations Act and related statutes. Therefore, this Court concludes that "public building" and "public structure" refer to buildings and structures "owned or to be owned and used by a government entity (or its alter ego) for a government-authorized public purpose." *Mech. Contractors*, 674 A.2d at 755. Because the CNG fueling stations are not "owned or to be owned and used by a government entity (or its alter ego) for a government-authorized public purpose[,]" *id.* at 755, this Court holds that they are not public structures under the Procurement Code. Because the CNG fueling stations are not public structures and, therefore, do not fall within the Procurement Code's definition of construction, the Grants do not constitute "an award whose primary purpose is to procure construction for the grantor" under Section 102(f) of

─────────────────────────────────────────────────────────────

> [W]here, as here, the contemplated use of property is in aid of, and ancillary to, the exercise of the police power, the public nature of such use is conclusively determined, and therefore the [s]tate may, where the use of the highways is hampered by a local lack of parking facilities, authorize the municipal acquisition and operation of publicly owned and operated parking facilities reasonably calculated to alleviate that condition.
>
> [*McSorley v. Fitzgerald*, 59 A.2d 142, 146 (Pa. 1948).]
>
> This Court said in *Tragesser . . .* , 169 A. [at 378], that the words 'any public building' '. . . must be construed, quoad the statute, to refer, as their words in fact state, to **'any public building,' that is, any building owned or to be owned by the borough and used or to be used for public purposes**.'

*Pub. Parking Auth.*, 76 A.2d at 624 (emphasis added).

16

the Procurement Code, and sovereign immunity bars Petitioner's action. 62 Pa.C.S. § 102(f).

This Court is cognizant that its decision leaves Petitioner without a remedy. Nonetheless, as this Court acknowledged in *Telwell*:

[W]e agree with our Supreme Court's statement that

> some immunity applications may be distasteful to those who may discern government wrongdoing, or at least unremediated collateral injury to private concerns resulting from governmental changes. In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers. Thus, in the absence of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.

[*Sci. Games Int'l, Inc. v. Dep't of Revenue*, 66 A.3d 740,] 755 [(Pa. 2013)] (footnote omitted).

*Telwell*, 88 A.3d at 1089.

For all of the above reasons, the Board's Order is affirmed.

_____
ANNE E. COVEY, Judge

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

U.S. Venture, Inc.,              :
          Petitioner    :
                           :
       v.                 :
                           :
Commonwealth of Pennsylvania,  :
Department of Community and   :
Economic Development;         :
Commonwealth Financing Agency; and :
Scott D. Dunkelburger, Executive   :
Director of the Commonwealth    :
Financing Agency,          :   No. 78 C.D. 2019
          Respondents  :

## O R D E R

AND NOW, this 18th day of February, 2020, the Pennsylvania Board of Claims' December 28, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge